United States Court of Appeals,

Fifth Circuit.

No. 94-20377.

James G. HETZEL, Plaintiff-Appellant,

v.

BETHLEHEM STEEL CORPORATION, Defendant-Appellee.

April 24, 1995.

Appeal from the United States District Court for the Southern District of Texas.

Before WISDOM, DUHÉ and BENAVIDES, Circuit Judges.

DUHÉ, Circuit Judge:

Appellant James G. Hetzel (Hetzel) appeals from the district court's grant of summary judgment finding that Appellant's claims under the Texas Deceptive Trade Practices Act are preempted by the Longshore and Harbor Workers' Compensation Act (LHWCA or Act). We affirm.

## I. FACTS

Appellant sued in state court seeking recovery on various grounds from his employer, Bethlehem Steel Corporation (Bethlehem or Appellee) and from the ship owner, Marine Transport Lines, Inc. (MTL), for personal injuries allegedly sustained while repairing the M/V Federal Lakes at Bethlehem's Port Arthur, Texas shipyard. Appellant also sought and obtained benefits under the LHWCA.

Appellant's suit was removed by MTL under the court's diversity jurisdiction. MTL and Bethlehem separately moved for summary judgment. The district court granted both motions, and entered final judgment for the Defendants. On motion for

reconsideration, the district court affirmed its rulings on Appellant's negligence and strict liability claims, but reinstated Appellant's claim against Bethlehem under the Texas Deceptive Trade Practices-Consumer Protection Act (DTPA).[1]  The court remanded the DTPA claim to state court, apparently under the mistaken impression that its jurisdiction arose under 28 U.S.C. § 1331 (admiralty and maritime claims) rather than 28 U.S.C. § 1332 (diversity of citizenship).

Upon motions for reconsideration filed by Appellant and Appellee, the district court affirmed its dismissal of MTL.  The court also found that its remand of the DTPA claim was improper, but concluded that it was without jurisdiction to vacate its order of remand.  Bethlehem then removed the DTPA claim, and the matter was assigned a new cause number.

Appellee mistakenly filed a motion for summary judgment under the previous cause number.  Appellant moved for extension of time (also under the old cause number) to respond until March 14, 1994. The court, in effect granted the motion for extension of time by entering an order allowing Appellee to refile its motion under the correct cause number by March 7, 1994, and further allowing Appellee to file its response by March 14, 1994.  Appellee did not refile its motion for summary judgment until March 8th.

According to Appellant, he assumed that Appellee's motion was not timely filed, and therefore that he would not be required to respond unless notified by the court.  Nonetheless, on March 15th

---

[1]Tex.Bus. & Com.Code Ann. § 17.41 *et seq.* (West 1987).

2

Appellant again moved for enlargement of time to respond, and requested a new filing date of April 3rd. The district court denied the motion citing potential conflict with its April 6th calendar on which the matter had been set. The court further stated that Appellant had seven weeks to prepare its response to the motion,[2] and had, in fact, selected the March 14th date on which its response had been due.

The court granted Appellee's motion for summary judgment on alternative grounds. First, in accordance with the local rule, the court granted the motion as unopposed.[3] Second, the court addressed the merits of Appellee's motion, and granted summary judgment on the basis that Appellant's DTPA claim was preempted by the LHWCA. Appellant timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

---

[2]The court asserted that Appellant had been put on notice of the motion when the Appellee mistakenly filed it under the prior cause number.

[3]We have previously disapproved of granting summary judgment on this basis. *See, e.g., Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima,* 776 F.2d 1277, 1279 (5th Cir.1985),

> A motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule. The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed. Therefore, if the district judge's decision was to grant summary judgment solely because of a default, such decision constituted reversible error.

(citations omitted). However, because the district court addressed the merits of the motion as an alternative holding, we need not reverse.

3

Two issues are before us on appeal. First, Appellant contends that his DTPA claim is not preempted by the LHWCA. Second, Appellant contends that the district court abused its discretion by 1) accepting Appellee's motion after the filing deadline; and 2) denying his motion for enlargement of time. We will address these issues seriatim.

## II. THE LHWCA

### A. Standard of Review

Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reviewing the summary judgment, we apply the same standard of review as did the district court. *Waltman v. International Paper Co.,* 875 F.2d 468, 474 (5th Cir.1989); *Moore v. Mississippi Valley State Univ.,* 871 F.2d 545, 548 (5th Cir.1989). However, when this Court finds "an adequate, independent basis" for the imposition of summary judgment, the district court's judgment may be affirmed "regardless of the correctness of the district court's rulings." *Schuster v. Martin,* 861 F.2d 1369, 1371 (5th Cir.1988); *accord Degan v. Ford Motor Co.,* 869 F.2d 889, 892 (5th Cir.1989).

### B. Choice of Law

Despite the fact that the district court entertained this claim under its diversity jurisdiction, we apply federal law to determine questions of preemption. *See Grantham v. Avondale Indus., Inc.,* 964 F.2d 471, 473-74 (5th Cir.1992).

> The *Erie* doctrine does not apply ... in matters governed by the federal Constitution or by acts of Congress. It is beyond cavil that we are not bound by a state court's interpretation of federal law regardless of whether our jurisdiction is based on diversity of citizenship or a federal question.... The issue of whether the state immunity rule is preempted by the LHWCA is ... an issue of federal law.

(citations omitted).

## C. The Preemption Doctrine

The Supreme Court has stated the parameters of the so-called "preemption" doctrine. *Fidelity Federal Sav. & Loan Ass'n v. De La Cuesta,* 458 U.S. 141, 152-53, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982).

> The pre-emption doctrine, which has its roots in the Supremacy Clause, U.S. Const., Art. VI, cl. 2, requires us to examine congressional intent. Pre-emption may be either express or implied, and "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." Absent explicit pre-emptive language, Congress' intent to supersede state law altogether may be inferred because "[t]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," because "the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," or because "the object sought to be obtained by federal law and the character of obligations imposed by it may reveal the same purpose."

> Even if Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when "compliance with both federal and state regulation is a physical impossibility, or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

Thus, state law can be preempted in three ways: 1) Where Congress expresses an explicit intent to preempt state law; 2) Where the sheer comprehensiveness of the federal scheme implies congressional intent to preempt state regulation in the area; 3) Where the state

5

law either directly conflicts with the federal law or interferes with the regulatory program established by Congress.

As discussed more fully below, although the LHWCA's exclusivity language would seem to express congressional intent to preempt state law, the Supreme Court has found that total preemption was not intended. Therefore, we are left to determine whether the DTPA is preempted under the third prong of the *Fidelity Federal* test.

*D. The Muddy Waters of LHWCA Preemption*

Our starting point must be the language of the LHWCA. Under the terms of the Act,

> The liability of an employer prescribed in section 904 of this title *shall be exclusive and in place of all other liability of such employer to the employee,* his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under the chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death.

33 U.S.C. § 905(a). The preemptive effect of the LHWCA has been addressed in other contexts.[4] Of concern to our present inquiry

---

[4]*See e.g. Texas Employers' Ins. Ass'n v. Jackson,* 820 F.2d 1406 (5th Cir.1987) (LHWCA preempted state law causes of action arising from handling of compensation payments under the act), *opinion vacated and rev'd on other grounds,* 862 F.2d 491 (5th Cir.1988) (en banc); *LeSassier v. Chevron USA, Inc.,* 776 F.2d 506, 508 (5th Cir.1985) (LHWCA's retaliatory discharge provision preempted state law tort suit for retaliatory discharge); *But cf. Sun Ship, Inc. v. Pennsylvania,* 447 U.S. 715, 722, 100 S.Ct. 2432, 2437-38, 65 L.Ed.2d 458 (1980) ("The language of the 1972 amendments cannot fairly be understood as preempting state workers' remedies from the field of the LHWCA...."); *Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 528-33, 103 S.Ct.

are those cases which created, and then purported to delineate, the so-called "twilight zone" of concurrent jurisdiction between the LHWCA and state law workmen's compensation statutes.  Because the LHWCA only partially preempts state law, we must briefly explore the history of the Act to determine congressional intent in this context.[5]  We begin our inquiry with *Southern Pacific Co. v. Jensen,* 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917).

In *Jensen,* the Supreme Court found that the State of New York could not constitutionally provide worker's compensation to a worker killed on a gangplank between ship and shore.  Even though the decedent was not a seaman, the Court determined that he was acting as a stevedore, over navigable waters, at the time of the accident and therefore determined that his claim fell "clearly within the admiralty jurisdiction."  *Id.* at 217, 37 S.Ct. at 529.  In cases that followed, the Supreme Court made clear that its concern for uniform maritime law ended at the water's edge, and

---

2541, 2548-50, 76 L.Ed.2d 768 (1983) (Stevedore may maintain tort action against employer if employer is also the owner of the vessel on which he is injured.), *Guilles v. Sea-Land Service, Inc.,* 12 F.3d 381, 387 (2nd Cir.1993) ("[W]e hold that those maritime workers covered by the LHWCA have under § 905(b) a cause of action for negligence against vessel owners even if the vessel is owned by the worker's employer.");  *Louviere v. Shell Oil Co.,* 509 F.2d 278, 284 (5th Cir.1975) ("[E]mployer who pays compensation without an award is not barred by Section 33 from pursuing whatever nonstatutory rights he may have against third party wrongdoers."), *cert. denied,* 423 U.S. 1078, 96 S.Ct. 867, 47 L.Ed.2d 90 (1976).

[5]For a more detailed discussion of the LHWCA's history, *see Director, Office of Workers' Compensation Programs v. Perini North River Assoc.,* 459 U.S. 297, 103 S.Ct. 634, 74 L.Ed.2d 465 (1983);  *Peter v. Hess Oil Virgin Islands Corp.,* 903 F.2d 935, 943-53 (3rd Cir.1990).

therefore found that state worker's compensation schemes covered injuries to worker's injured on land, no matter how close the link to maritime commerce.[6]

The Court next created the so-called "maritime but local" exception that allowed certain workers, injured on navigable waters, to receive state worker's compensation benefits.

> If the employment of an injured worker was determined to have no "direct relation" to navigation or commerce, and "the application of local law [would not] materially affect" the uniformity of maritime law, then the employment would be characterized as "maritime but local," and the State could provide a compensation remedy. If the employment could not be characterized as "maritime but local," then the injured employee would be left without a compensation remedy.

*Perini North River Assoc.,* 459 U.S. at 306, 103 S.Ct. at 641. In an effort to remedy this judicially created disparity between workers, Congress passed the LHWCA.[7] The confusion, however, was

---

[6]*See State Industrial Comm'n v. Nordenholt Corp.,* 259 U.S. 263, 272-73, 42 S.Ct. 473, 474, 66 L.Ed. 933 (1922),

> When an employee working on board a vessel in navigable waters sustains personal injuries there, and seeks damages from the employer, the applicable legal principles are very different from those which would control if he had been injured on land while unloading the vessel. In the former situation the liability of employer must be determined under the maritime law; in the latter, no general maritime rule prescribes the liability, and the local law has always been applied.

[7]*Perini North River Assoc.,* 459 U.S. at 306-07, 103 S.Ct. at 643-44,

> After several unsuccessful attempts to permit state compensation remedies to apply to injured maritime workers whose employment was not local, Congress passed the LHWCA in 1927. Under the original statutory scheme, a worker had to satisfy five primary conditions in order to be covered under the Act.
>
> ....

8

not so easily remedied.

In 1942, the Supreme Court recognized that its case law had not been successful in delineating the application of the LHWCA, and made another effort to clarify the Act's jurisdiction.[8] The Court recognized that it had left both employers[9] and injured employees[10] on "[t]he horns of [a] jurisdictional dilemma." *Davis*

---

> Federal compensation under the LHWCA did not initially extend to all maritime employees injured on the navigable waters in the course of their employment.... § 3(a) of the 1927 Act permitted federal compensation only if compensation "may not validly be provided by State law." This language was interpreted to exclude from LHWCA coverage those employees whose employment was "maritime but local."

[8]*See Davis v. Dept. of Labor & Indus.,* 317 U.S. 249, 253, 63 S.Ct. 225, 227, 87 L.Ed. 246 (1942).

[9]*See id.* at 255, 63 S.Ct. at 228,

> The employer's contribution to a state insurance fund may therefore wholly fail to protect him against the liabilities for which it was specifically planned. If this very case is affirmed for example, the employer will not only lose the benefit of the state insurance to which he has been compelled to contribute and by which he has thought himself secured against loss for accidents to his employees; he must also, by virtue of the conclusion that the employee was subject to the federal act at the time of the accident, become liable for substantial additional payments. He will also be subject to fine and imprisonment for the misdemeanor of having failed, as is apparently the case, to secure payment for the employee under the federal act.

[10]*See id.* at 254, 63 S.Ct. at 228,

> [E]mployees are asked to determine with certainty before bringing their actions that factual question over which courts regularly divide among themselves and within their own membership. As penalty for their error, the injured individual may not only suffer serious financial loss through the delay and expense of litigation, but discover that his claim has been barred

9

317 U.S. at 255, 63 S.Ct. at 228. As the Supreme Court stated subsequently,

> We upheld the application of the state compensation law in *Davis* not because the employee was engaged in "maritime but local" employment, but because we viewed the case as in a "twilight zone" of concurrent jurisdiction where LHWCA coverage was available and where the applicability of state law was difficult to determine. We held that doubt concerning the applicability of state compensation Acts was to be resolved in favor of the constitutionality of the state remedy.

*Perini North River Assoc.,* 459 U.S. at 309, 103 S.Ct. at 643.

The full extent of the confusion in this "twilight zone" of jurisdiction is exemplified by the Supreme Court's holding in *Hahn v. Ross Island Sand & Gravel Co.*[11] Therein, the Court found that an injured employer, in the so-called "twilight zone" of concurrent jurisdiction, could bring a state law negligence suit against his employer. *Id.* at 273, 79 S.Ct. at 267.

> As to cases within this "twilight zone," Davis, in effect, gave an injured waterfront employee an election to recover compensation under either the Longshoremen's Act or the Workmen's Compensation Law of the State in which the injury occurred.... [t]he Longshoremen's Act did not bar petitioner's claim under state law. But since his employer had elected to reject them, the automatic compensation provisions of the Oregon Workmen's Compensation Act did not apply to the claim. Section 656.024 of that law provides, however, that when an employer has elected to reject the Act's automatic compensation provisions his injured employee may maintain in the courts a negligence action for damages. Of course, the employee could not do this if the case were not within the "twilight zone," for then the Longshoremen's Act would provide the exclusive remedy.

---

by the statute of limitations in the proper forum while he was erroneously pursuing it elsewhere.

[11]358 U.S. 272, 79 S.Ct. 266, 3 L.Ed.2d 292 (1959) (per curiam).

*Id.*[12]  While this exciting saga continues, we have come far enough to answer the question before us.

*E. Concurrent Jurisdiction—Working in the "Twilight Zone"*

As a preliminary matter, for purposes of argument, and in accordance with summary judgment protocol to resolve disputed issues in favor of the non-moving party, we make two assumptions. First, we assume without deciding that Appellant's employment falls into the "twilight zone" of concurrent jurisdiction.  Second, we also assume without deciding that Texas would permit an employee, who is receiving workman's compensation, to lodge a DTPA suit against his employer.  There is no dispute that Appellant is a covered worker, and has received benefits under the LHWCA for his injury.

As set forth above, federal preemption can occur where a state statute either directly conflicts with federal law or frustrates the purpose behind the federal law.  We find that both conditions occur here.  First, § 905(a) provides in part, "The liability of an employer prescribed in section 904 of this title shall be exclusive and *in place of all other liability* of such employer to the employee."  (emphasis supplied).  Where liability arises as a result of the employment relationship,[13] Congress explicitly

---

[12]Although the LHWCA was amended in 1972, the Supreme Court has made clear that the *Davis* and its progeny have continuing vitality.  *See Sun Ship, Inc. v. Pennsylvania,* 447 U.S. 715, 720-21, 100 S.Ct. 2432, 2436-37, 65 L.Ed.2d 458 (1980).

[13]The district court *sua sponte* addressed the "dual capacity" doctrine.  Under this doctrine, some courts have allowed an injured employee to maintain a tort suit against his employer by asserting that the employer was acting in a capacity

intended for the LHWCA to be the exclusive remedy.  *See also Levene v. Pintail Enter., Inc.,* 943 F.2d 528, 531 (5th Cir.1991) ("The LHWCA absolutely bars suit for all other acts taken in the capacity as the employer of the injured worker.")

Second, the Supreme Court has previously delineated the policy and congressional purpose behind the Act.  *See Morrison-Knudsen Const. Co. v. Director, Office of Workers' Compensation Programs, U.S. Dep't of Labor,* 461 U.S. 624, 636, 103 S.Ct. 2045, 2052, 76 L.Ed.2d 194 (1983),

> [T]he [LHWCA is] not a simple remedial statute intended for the benefit of the workers.  Rather, it was designed to strike a balance between the concerns of the longshoremen and harbor workers on the one hand, and their employers on the other.  Employers relinquished their defenses to tort actions in exchange for limited and predictable liability.  Employees accept the limited recovery because they receive prompt relief without the expense, uncertainty, and delay that tort actions entail.

*see also Fontenot v. AWI, Inc.,* 923 F.2d 1127, 1132–33 (5th Cir.1991),

> Worker's compensation laws, like the LHWCA, typically replace a negligence action with an administrative system as the method for determining an employee's right to, and amount of, compensation for injuries sustained on the job....  In enacting the LHWCA, Congress intended that it be the sole and exclusive remedy for workers within its scope, not a stepping stone on the way to a jury award.

*Brown v. Forest Oil Corp.,* 29 F.3d 966, 971 (5th Cir.1994) ("Turning to § 905(a), itself, the purpose of that section is to induce employers to accept and participate in the LHWCA compensation scheme by eliminating the non-participating employer's

---

other than "as employer" at the time of the injury.  While the Appellees raise this issue on appeal, Appellants do not, and therefore we do not address the issue.

immunity from tort actions under the LHWCA."). Congressional policy would be frustrated if an injured worker were allowed to collect benefits under the Act, and then sue his employer under a state statutory tort theory. Not only does the function of the LHWCA depend on the exclusiveness of the remedy, but the language of the Act plainly mandates such a result. Preemption of the state act is required to avoid frustration of the policies and purpose behind the LHWCA.

Appellant elected his remedy by applying for and receiving compensation benefits under the LHWCA. Although, as discussed above, Texas may have concurrent jurisdiction vis-a-vis its worker's compensations laws, once Appellant elected the LHWCA remedy, he is bound by the provisions of the Act.[14] Therefore, even if Texas would allow a DTPA remedy to supplant the immunity provisions of its own worker's compensation statute, it cannot supplant the immunity provision of the LHWCA. Because application of the DTPA, in this context, is clearly contrary to the provisions of the LHWCA and conflicts with the purpose of the Act, Appellant's claim against his employer is preempted.

### III. APPELLANT'S FAILURE TO RESPOND

Appellant's final argument warrants little discussion.

---

[14] *Compare LeSassier v. Chevron USA, Inc.,* 776 F.2d 506 (5th Cir.1985) (Once employee was covered under LHWCA, the Act's retaliatory discharge provision preempted state law tort suit for retaliatory discharge) *with Hahn v. Ross Island Sand & Gravel Co.,* 358 U.S. 272, 79 S.Ct. 266, 3 L.Ed.2d 292 (1959) (per curiam) (Worker who elected to proceed under state worker's compensation system can sue for negligence where employer refuses to pay compensation and state act allows such a suit).

Appellant asserts that the district court abused its discretion by 1) accepting Appellee's motion for summary judgment out of time, and 2) denying Appellant's motion for enlargement of time to respond. Under Fed.R.Civ.P. 6(b), the district court is granted broad discretion to expand filing deadlines. *See e.g. Maldonado-Denis v. Castillo-Rodriguez,* 23 F.3d 576, 583 (1st Cir.1994); *Woods v. Allied Concord Financial Corp.,* 373 F.2d 733, 734 (5th Cir.1967).

The district court entered its scheduling order on March 3rd, and therefore, Appellee's explanation that mailing delays caused its motion to be filed on March 8th, one day late, was perfectly reasonable. Accepting the motion a day late was clearly within the court's discretion. Appellant had notice of the pending motion beginning in January 1994 when the Appellee mistakenly filed its motion under the incorrect cause number. Appellant himself suggested the deadline that he subsequently requested to extend. In addition, Appellant's second request for an extension of time would have required the cause to be removed from the district court's April calendar. We find no indication that the district court abused its discretion by accepting Appellee's motion after the filing deadline. Nor do we find that the district judge abused her discretion by denying Appellant's motion for extension of time.

## IV. CONCLUSION

For the reasons above, we find that Appellant's claim under the Texas Deceptive Trade Practices-Consumer Protection Act is preempted by the Longshore Harbor Worker's Compensation Act. We

14

further find that the district court properly exercised its discretion by accepting Appellee's motion out of time and by denying Appellant's motion for enlargement of time. The judgment of the district court is AFFIRMED.