United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 18, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 06-30407
Summary Calendar

RONALD MATTHEWS

       Plaintiff - Appellant

v.

UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA;
LOUISIANA/MISSISSIPPI CARPENTERS REGIONAL COUNCIL, CARPENTER'S
LOCAL 1098

       Defendants - Appellees

--------------------------------

RONALD MATTHEWS
       Plaintiff - Appellant

v.

LOUISIANA/MISSISSIPPI CARPENTERS REGIONAL COUNCIL

       Defendant - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana, Baton Rouge
USDC No. 3:03-CV-49

Before KING, HIGGINBOTHAM, and GARZA, Circuit Judges.

PER CURIAM:[*]

---

   [*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

Plaintiff-appellant Ronald Matthews appeals the district court's judgment, arguing that the district court erred when it held that he was required to file an internal grievance before utilizing the court system. We AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Matthews, an African-American and long-time member of Carpenter's Local 1098, worked as a Business Representative-Organizer with the Louisiana/Mississippi Carpenters Regional Council ("the Regional Council"). The Regional Council is a regional labor organization, comprised of representatives of local Carpenters' unions throughout Mississippi and Louisiana. Executive Board members from the local unions make up the Regional Council's governing body. The Executive Secretary-Treasurer oversees the Regional Council's day-to-day functions.

Kevin T. Curley, a white male and then Executive Secretary-Treasurer, hired Matthews and assigned him office space at his local union, Carpenters Local Union 1098, in Baton Rouge. Matthews's primary job responsibility was organizing unrepresented workers and contractors and persuading them of the benefits of unionization. Matthews often visited workers at job sites and at their homes to discuss joining the union. At times Matthews also assisted in referring union members to jobs.

Granville Stewart, Director of Organizing, served as Matthews's direct supervisor. Because Stewart did not have his

office in Baton Rouge, he used other Regional Council employees in the Local 1098 office as lead organizers to direct the daily tasks of the Regional Council organizers in that office. Joseph Ardoin Jr. served as the lead organizer when Matthews began working for the Regional Council in December 2000. Jason Engels replaced Ardoin as lead organizer in September 2001 and served in that position throughout the remainder of Matthews's employment.

On January 28, 2002, Stewart recommended that Matthews be discharged from employment. Wiley LeBert, Acting Executive Secretary-Treasurer, sought and received permission from the Regional Council's Executive Board to terminate Matthews's employment. On April 24, 2002, LeBert wrote a letter to Matthews notifying him of the discharge. Stewart delivered the letter to Matthews and told Matthews that he was being discharged for ineffective performance.

Matthews filed a charge with the EEOC against the Regional Council. After conducting an investigation, the EEOC dismissed Matthews's charge on the basis that it was unable to find a violation. Matthews then filed this lawsuit against United Brotherhood of Carpenters and Joiners of America; Louisiana/Mississippi Carpenters Regional Council, and Carpenter's Local 1098, alleging racial discrimination in violation of Title VII and 42 U.S.C. § 1981, intentional infliction of emotional distress, and abuse of rights. The defendants-appellees filed motions for summary judgment, which

3

the district court granted.  Matthews now appeals the district court's judgment.

## II. SUMMARY JUDGMENT

We review a district court's grant of summary judgment de novo, using the same standards applied by the district court. Riverwood Int'l Corp. v. Employers Ins. of Wausau, 420 F.3d 378, 382 (5th Cir. 2005).  Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmovant, "there is no genuine issue of any material fact" and the moving party is "entitled to judgment as a matter of law."  Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States, 832 F.2d 1358, 1364 (5th Cir. 1987); FED. R. CIV. P. 56(c).

Once the moving party establishes that there is no genuine issue, the burden shifts to the nonmoving party to produce evidence of the existence of a genuine issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The nonmoving party cannot rely only upon allegations, denials in a pleading, or unsubstantiated assertions that a fact issue exists, but must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."  Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  The district court may not grant a motion for summary judgment simply because it is unopposed.  Hetzel v. Bethlehem Steel Corp., 50 F.3d 360, 362 n.3 (5th Cir. 1995).

4

The district court granted summary judgment on the basis that Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998), required Matthews to take advantage of the internal grievance procedures set in place by his employer before taking action in court. The district court improperly applied Faragher. The Supreme Court in Faragher held that in sexual harassment cases for a hostile environment, when no tangible adverse employment action resulted, employers are exempted from liability if the employee unreasonably fails to take advantage of a policy set in place by the employer to avoid harm. 524 U.S. at 807. The affirmative defense in Faragher does not apply to Matthews's case for two reasons: (1) this case is a racial discrimination case for wrongful termination, not a sexual, or other, harassment case;[1] and (2) Matthews suffered a tangible employment action-- termination. See id.

However, we may affirm summary judgment on alternative grounds than those relied upon by the district court when the record provides "an adequate and independent basis for that result." Guthrie v. Tifco Indus., 941 F.2d 374, 379 (5th Cir. 1979). Such a basis exists here.

The plaintiff in an employment discrimination case may present either direct or circumstantial evidence of intentional

---

[1] Matthews conceded before the district court that he could not establish a claim for hostile work environment.

5

discrimination.[2]  See Machinchick v. PB Power, Inc., 398 F.3d 345, 350 (5th Cir. 2005).  When the plaintiff presents only circumstantial evidence that his discharge was motivated by race discrimination, the court applies the McDonnell Douglas burden-shifting analysis.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under that analysis, the plaintiff must first present evidence establishing the existence of a prima facie case of gender discrimination.  See Machinchick, 398 F.3d at 350. After the plaintiff establishes a prima facie case, a presumption of discrimination arises and the burden of production shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the employment action at issue.  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981).

If the defendant meets this burden of production, "the presumption of discrimination created by the plaintiff's prima facie case disappears and the plaintiff must meet [his] ultimate burden of persuasion on the issue of intentional discrimination." Id.  A plaintiff may meet this burden by producing evidence either that the defendant's proffered nondiscriminatory reasons are false or, if true, that his protected characteristic was, nevertheless, a motivating factor for the adverse employment

---

[2]  The test to survive summary judgment on racial discrimination claims under § 1981 is the same as the test for racial discrimination claims under Title VII.  Patel v. Midland Mem'l Hosp. & Med. Ctr., 298 F.3d 333, 342 (5th Cir. 2002).

action.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."); see also Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (holding that "[e]vidence demonstrating the falsity of the defendant's explanation taken together with the prima facie case, is likely to support an inference of discrimination even without further evidence of [the employer's] true motive.").  If a plaintiff demonstrates that a protected characteristic was a motivating factor in the employment decision, the defendant must then prove that the same employment decision would have been made even in the absence of the discriminatory motive.  See Rachid v. Jack-in-the-Box, Inc., 376 F.3d 305, 309-10 (5th Cir. 2004).

The Regional Council conceded that Matthews establishes a prima facie case of racial discrimination.  Further, Matthews acknowledged before the district court that the Regional Council provided a legitimate, nondiscriminatory basis for his discharge--that he poorly performed in the workplace.  Ample evidence of poor performance has been presented.  The Regional Council points to a formal written job evaluation by Stewart which rated Matthews poorly in seven of eleven categories.  The highest score Matthews received in any category was a three out of five.  Engels, the lead organizer, also documented many other

7

problems with Matthews's performance including that Matthews failed to show up for specific assignments, conducted excessive personal phone calls at work, slept during meetings, was routinely tardy, lacked enthusiasm, misplaced his attention on the work of others, and failed to obtain volunteers to work the union's phone bank. Accordingly, the only remaining question is whether Matthews presented evidence that the reason given for his discharge was a pretext for discriminating against him or that his race was a motivating factor in his termination.

Matthews unsuccessfully attempts to rebut the Regional Council's non-discriminatory reasons for his discharge by arguing that he did good work. But Matthews cites to no evidence that he performed well, other than allegations in his own complaint and Ardoin's comment that Matthews did a good job recruiting black union members. Indeed, when Stewart asked Matthews to review the evaluation, Matthews did not contest the lowest ratings he received in numerous categories, including public speaking, leadership abilities, ability to develop campaign strategies, and determination. Matthews presented no evidence to rebut either Engels's reports concerning Matthews's problems or Stewart's evaluation; accordingly, Matthews failed to provide any evidence that the Regional Council's nondiscriminatory reason was a pretext.

Matthews also fails to make the case that discrimination was a motivating factor in the Regional Council's decision to fire

8

him.  Matthews points to comments made by Ardoin[3] as evidence that racial discrimination played a factor in his termination, and he contends that under Palasota v. Haggar Clothing Co., 342 F.3d 569, 578 (5th Cir. 2003), these remarks constitute proof of an employer's illegal racial animus.  This court held in Palasota that discriminatory remarks may be taken into account "even where the comment is not in the direct context of the termination and even if uttered by one other than the formal decision maker, provided that the individual is in a position to influence the decision."  342 F.3d at 578.  But the instant case can be distinguished from Palasota, where members of upper management made the discriminatory comments, because there is no evidence that Ardoin was in a position to influence the decision makers. At the time the Executive Board decided to terminate Matthews, Ardoin no longer had a management role and had not had one for seven months.  Matthews points to no evidence that Ardoin influenced either Stewart's recommendation to discharge Matthews or the Regional Council's ultimate decision to discharge

---

[3] The alleged remarks made by Ardoin are:
1.  On December 13, 2000, Matthews asked Ardoin if Ardoin ever thought he would see a day a black man was working at Local 1098.  Ardoin replied no, he never thought he would see the day.
2.  In December 2001, Ardoin told Matthews that if Matthews kept organizing black members, the black members would outnumber the white members.
3. In February 2002, Matthews overheard Ardoin tell someone on the telephone that Matthews had a "nigger" using Ardoin's telephone.

Matthews.[4]  Accordingly, Matthews has presented no evidence that race was a motivating factor in the decision to terminate him. Because Matthews failed to present evidence that the Regional Council's non-discriminatory reason for terminating him was pretext or that race was a motivating factor in the discharge decision, Matthews cannot withstand summary judgment.

## III. CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED.

---

[4] Discriminatory intent may be established by evidence that employees outside Matthews's protected class were treated more favorably than him in similar situations.  See Keelan v. Majesco Software, Inc., 407 F.3d 332 (5th Cir. 2005).  Matthews complains that secretaries failed to give him phone messages, failed to receive a set of keys, and that mail addressed to him was opened by support staff, but there is no evidence that these incidents were related to the decision to fire him. Similarly situated white employees were affected in most cases.