# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 12, 2023

Lyle W. Cayce
Clerk

No. 21-30761

Lynn Barrosse; Raegan Holloway; Makenzie Stricker,

*Plaintiffs—Appellants*,

*versus*

Huntington Ingalls, Incorporated, *formerly known as* Northrop Grumman Shipbuilding, Incorporated, *formerly known as* Northrop Grumman Ship Systems, Incorporated, *formerly known as* Avondale Industries, Incorporated,

*Defendant—Appellee*.

---

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:20-CV-2042

---

Before Richman, *Chief Judge*, and Ho and Engelhardt, *Circuit Judges*.

Kurt D. Engelhardt, *Circuit Judge*:

Federal law is the "supreme Law of the Land." U.S. Const. art. VI. When a state law looks like it might conflict with a federal statute or regulation, courts consider preemption to see if the state law in question must yield. *Perry v. Mercedes Benz of N. Am., Inc.*, 957 F.2d 1257, 1261 (5th Cir. 1992). Here, Defendant-Appellee argues that Plaintiffs-Appellants' state-law tort claims are preempted by the federal Longshore and Harbor Workers'

No. 21-30761

Compensation Act ("LHWCA" or "the Act"). But, under the specific facts of this case and applicable Supreme Court caselaw, they are not. We therefore REVERSE and REMAND.

## I

## A

Ronald Barrosse[1] worked for Defendant-Appellee Huntington Ingalls (formerly "Avondale") as a shipyard electrician from February 1969 to June 1977. In March 2020, Barrosse was diagnosed with mesothelioma. Following his diagnosis, he filed a state-law tort suit in the Civil District Court for the Parish of Orleans alleging that Avondale, among other defendants, caused Barrosse to contract mesothelioma by exposing him to asbestos in a negligent manner. Because Barrosse primarily worked on United States Navy ships when he was exposed, Avondale removed the case to federal district court under the federal officer removal statute. *See* 28 U.S.C. § 1442; *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020) (en banc). Barrosse never claimed benefits under the LHWCA, which provides a no-fault compensation remedy to injured workers. 33 U.S.C. § 904.

Avondale moved for summary judgment. Relevant here, Avondale argued that Barrosse's state-law tort claims were preempted by the LHWCA because they directly conflicted with and frustrated the purposes of the Act. The district court agreed and held that the claims are preempted. *Barrosse v. Huntington Ingalls Inc.*, 563 F. Supp. 3d 541, 559 (E.D. La. 2021). Barrosse appeals.

---

[1] Barrosse unfortunately passed away mid-litigation, so his survivors substituted themselves as Plaintiffs-Appellants. To avoid confusion, they will collectively be referred to herein as "Barrosse."

No. 21-30761

B

While cases about statutes typically begin with the text, recounting the development of federal maritime compensation law is necessary to understand the nuances presented in this case. In 1917, the Supreme Court "declared that States were constitutionally barred from applying their compensation systems to maritime injuries." *Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 717 (1980) (citing *S. Pac. Co. v. Jensen*, 244 U.S. 205 (1917)). After failed efforts to delegate compensation matters to the states, Congress passed the LHWCA in 1927 to provide compensation for maritime workers. *Id.* The original LHWCA expressly limited its application to those cases where state worker's compensation laws did not apply. *Id.* at 717–18.

But that limited application caused problems because it was unclear where "the boundary at which state remedies gave way to federal remedies" was. *Id.* at 718. Injured workers had to guess whether to file a claim under state or federal law, and "the price of error was unnecessary expense and possible foreclosure from the proper forum." *Id.* The Supreme Court responded with the creation of the so-called "twilight zone," an area of concurrent jurisdiction that applies on a case-by-case basis. *Id.* (discussing *Davis v. Dep't of Labor*, 317 U.S. 249, 253–56 (1942)).[2] Notably, it did so over a strong dissent which argued that the plain language of the Act "left no room for an overlapping dual system" of concurrent jurisdiction. *Davis*, 317 U.S. at 261 (Stone, C.J., dissenting). According to the dissent, the majority interpreted the LHWCA to "not mean what it says"—that "[i]f there is liability under the federal act, that liability is exclusive." *Id.*

---

[2] The district court noted that "there appears to be no genuine [dispute] of material fact that this is a twilight zone case," and the parties do not contest that conclusion on appeal. *Barrosse*, 563 F. Supp. 3d at 556.

No. 21-30761

Nevertheless, the twilight zone prevailed. Among other cases, the Supreme Court decided *Hahn v. Ross Island Sand & Gravel Co.*, 358 U.S. 272, 273 (1959) (per curiam). In *Hahn*, the plaintiff brought a state-law tort claim. *Id.* Because the plaintiff was in the twilight zone and compensation "could have been, and in fact was, validly provided by [s]tate law,"[3] the LHWCA "did not bar" the claim. *Id.* (quotation marks omitted). Like *Davis*, *Hahn* was decided over a dissent which argued that the twilight zone's regime of concurrent jurisdiction extended only to "a state workmen's compensation act or the [LHWCA]," and not to torts. *Id.* at 274 (Stewart, J., dissenting).

"In 1972, Congress . . . extend[ed] the LHWCA landward beyond the shoreline of the navigable waters of the United States." *Sun Ship*, 447 U.S. at 719. Rather than "resurrecting the jurisdictional monstrosity" of pre-*Davis* longshore compensation law, the Supreme Court reaffirmed the twilight zone because it remained unclear where federal jurisdiction ended and state jurisdiction began, even though that point "is fixed upon land." *Id.* at 719–20. The upshot is that despite the text of the Act expressly providing that employer liability for injuries falling under its ambit is "exclusive and in place of all other liability of such employer to the employee . . . at law or in admiralty," the Supreme Court has limited that exclusivity to cases outside the so-called twilight zone. 33 U.S.C. § 905(a).

---

[3] This particular phrase is in reference to the pre-1972 version of the LHWCA, which extended LHWCA coverage only if the state does not—and could not—validly provide recovery. *See Newport News Shipbuilding & Dry Dock Co. v. Dep't of Labor*, 583 F.2d 1273, 1277 (4th Cir. 1978) (discussing the language and its subsequent removal). The district court held that the post-1972 version of the LHWCA applies here, and Barrosse does not challenge that holding on appeal. *Barrosse*, 563 F. Supp. 3d at 548–52.

No. 21-30761

C

The pertinent development of Louisiana compensation law is shorter, but just as relevant in this case of concurrent jurisdiction. Louisiana passed the applicable version of its Workers' Compensation Act ("WCA") in 1952. *See* La. Rev. Stat. § 23:1031.1 (1952). Like most workers' compensation statutes, the WCA gave an injured worker a remedy that was "exclusive of all other rights and remedies." *Id.* The pertinent portion of the statute took a schedule approach, only covering the diseases listed in the statutory text. *See Rando v. Anco Insulations Inc.*, 16 So. 3d 1065, 1072–73 (La. 2009). If a disease was not listed, an afflicted worker could only bring a tort suit as neither the compensation nor the exclusivity provisions of the WCA applied. *Id.* at 1071.

Barrosse is one of those workers. Mesothelioma, the disease Barrosse suffered from, was not covered by the WCA until it was amended in 1975. *Id.; see Williams v. Lockheed Martin Corp.*, 990 F.3d 852, 864 (5th Cir. 2021). When survivors of a decedent bring state-law claims "based on asbestos exposure," we apply "the law in effect when the exposure occurred." *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 464 (5th Cir. 2016), *overruled on other grounds Latiolais*, 951 F.3d at 296 n.9.[4] Barrosse's claims are based on alleged exposure, as mesothelioma injuries in Louisiana are deemed to occur "at the time of significant exposure to asbestos, not later when [the] disease . . . manifest[s] itself." *Rando*, 16 So. 3d at 1083; *see Williams*, 990 F.3d at 865. Barrosse claims that his significant exposure first occurred vis-à-vis Avondale in 1969. Thus, the applicable version of the WCA does not cover the injury

---

[4] We do not address the district court's interpretation of *Savoie* or its holding that the post-1972 LHWCA applies to this dispute. Those issues are not presented here.

No. 21-30761

he suffered. *See Rando*, 16 So. 3d at 1071.[5] As a result, Barrosse's *only* state-law remedy is a tort suit. *Id*.

The upshot of these parallel events and their timing[6] is that once Barrosse discovered his injury, he could seek relief under *either* the LHWCA *or* state tort law.[7] The question presented in this case is whether state tort law

---

[5] The plaintiff in *Rando* was injured in 1970, but the 1952 WCA applied. *Rando*, 16 So. 3d at 1072.

[6] Condensing these developments, the following timeline emerges:

• 1927: Congress passes the LHWCA, providing workers' compensation remedies to maritime workers.

• 1942: The Supreme Court decides Davis, creating a regime of concurrent jurisdiction in twilight zone cases.

• 1952: Louisiana passes the applicable version of the WCA, which neither covers mesothelioma nor prohibits tort claims based on mesothelioma injuries.

• 1959: The Supreme Court decides Hahn, permitting a state-law tort claim in a twilight zone case when that tort claim was included in the state-law regime.

• 1969: Barrosse begins working for Avondale and suffers injury in the twilight zone for purposes of his present claims.

• 1972: Congress amends the LHWCA, expanding its coverage landward.

• 1975: Louisiana amends the WCA to cover mesothelioma injuries.

• 1980: The Supreme Court decides Sun Ship, reaffirming Davis and its twilight-zone progeny after the 1972 LHWCA amendment.

• 2020: Barrosse is diagnosed with mesothelioma and brings this suit.

[7] We do not address whether a plaintiff who brings a tort claim could subsequently obtain relief under the LHWCA. On at least one occasion, the Supreme Court has sanctioned LHWCA compensation *after* the beneficiary received state-law compensation, but only when the state payments were credited against LHWCA relief. *See Calbeck v. Travelers Ins. Co.*, 370 U.S. 114, 131 (1962) (upholding compensation payments under both the LHWCA and state law where the state payments were credited against the LHWCA payments so "no impermissible double recovery [wa]s possible"). Whether that holding extends to tort remedies is a question we leave for another day.

6

is preempted by the LHWCA in the twilight zone under those circumstances.

## II

We review the district court's grant of summary judgment de novo and affirm if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020). Here, the sole issue is preemption, which "is a question of law." *Baker v. Farmers Elec. Co-op., Inc.*, 34 F.3d 274, 278 (5th Cir. 1994). "Preemption of state law may be the result of either express preemption, field preemption, or conflict preemption." *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 389 (5th Cir. 2005).

Express preemption applies "[w]here Congress expresses an explicit intent to preempt state law." *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 363 (5th Cir. 1995). "Conflict preemption applies (1) where complying with both federal law and state law is impossible; or (2) where the state law creates an unacceptable obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 200 (5th Cir. 2013) (quotation omitted). Courts may not conduct "a freewheeling judicial inquiry into whether a state statute is in tension with federal objectives [because] such an endeavor would undercut the principle that it is Congress rather than the courts that pre-empts state law." *Chamber of Com. v. Whiting*, 563 U.S. 582, 607 (2011) (quotation omitted). For a state law to be conflict preempted, "a high threshold must be met." *Id.* (quotation omitted).

## III

Avondale argues that both express and conflict preemption bar Barrosse's claims.

No. 21-30761

A

Express preemption does not apply. There is no dispute that this is a twilight zone case. *Id.* at 556. In the twilight zone, "although the LHWCA's exclusivity language would seem to express congressional intent to preempt state law, the Supreme Court has found that total preemption was not intended." *Hetzel*, 50 F.3d at 363.[8] Thus, despite the clear proclamation of exclusivity in the LHWCA's text that prohibits any liability "at law or in admiralty" for injuries covered by the Act, there is no express preemption here. 33 U.S.C. § 905(a).

Fundamental tension between the plain text of the Act and twilight-zone concurrent jurisdiction has been apparent and controversial from the very beginning. Indeed, *Davis* itself created the twilight zone over a dissent which argued that the twilight zone "is plainly not permissible" and "controverts the words of the statute," which "left no room for an overlapping dual system" of concurrent jurisdiction. *Davis*, 317 U.S. at 261–64 (Stone, C.J., dissenting). Avondale would have us agree, but a dissent is just that. Perhaps time and Supreme Court reconsideration will ultimately conclude that the twilight zone's creation was beyond "judicial competence," *id.* at 260, but until then, there is no express preemption in the twilight zone. *Hetzel*, 50 F.3d at 363.

B

Neither does conflict preemption apply under these circumstances. The Supreme Court has recognized that LHWCA remedies exist

---

[8] It is apparent from context that the *Hetzel* panel was discussing express preemption despite using the phrase "total preemption." *See Hetzel*, 50 F.3d at 363. We clarify this point only to ensure that *Hetzel*'s imprecise language is not confused with "complete" preemption, an entirely different doctrine. *See Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580, 585 n.2 (5th Cir. 2022).

8

concurrently with state-law remedies, including at least some state-law tort claims, in the twilight zone. Consistent with that binding recognition, we cannot find that the limited and unusual circumstances that gave rise to Barrosse's state-law tort claims pose "an unacceptable obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Janvey*, 712 F.3d at 200. A contrary holding would, at least as far as Barrosse and similarly situated plaintiffs are concerned, have the LHWCA "supplant" rather than "supplement" state law by effectively eliminating the twilight zone and contradicting the Supreme Court's instruction in *Sun Ship*, 447 U.S. at 720. Indeed, Avondale concedes that if Barrosse's claims are preempted, his "exclusive remedy for any injury he suffered working for Avondale was—and is—available under the LHWCA." State law is nowhere to be found.

We begin our analysis by noting that existing caselaw is of little assistance. Numerous cases address LHWCA preemption of tort claims, but none address the situation before us—an injured employee, in the twilight zone, who declines to invoke the LHWCA but, under state law, is limited to a tort claim for relief.[9]

The most on-point case is *Hahn*, but *Hahn* neither prohibits nor endorses the claims at issue here. *Hahn* does not endorse claims like Barrosse's because it did not address a freestanding tort claim. The state statute in *Hahn* permitted employers to "elect[] to reject" the statute's "automatic compensation provisions," in which case an injured employee could bring "a negligence action for damages." *Hahn*, 358 U.S. at 273. Thus,

---

[9] Some district court cases address a similar fact pattern but neither acknowledge nor analyze the complications presented by a concurrent-jurisdiction regime where the only state-law remedy is a tort claim. *See, e.g.*, *Hulin v. Huntington Ingalls, Inc.,* 2020 WL 6059645, at *5–7 (E.D. La. Oct. 14, 2020).

*Hahn* only sanctioned a state-law tort claim that was expressly contemplated by state statute. Here, Barrosse's tort claims arise under state law because they are *not* included in the relevant statute, i.e., the WCA. Barrosse cannot obtain automatic compensation for mesothelioma, but neither does the WCA's exclusivity provision apply to any tort claims he might bring for that injury. *Hahn* does not prohibit claims like Barrosse's either. Nothing in *Hahn* holds that tort claims are *only* permissible when expressly contemplated by state compensation statutes. *Hahn* clearly opens the door to at least some tort claims, but it is ultimately inapposite.

Avondale would nevertheless have us read *Hahn* to limit state-law tort claims in the twilight zone to claims "provided for by state workers' compensation law" as a sanction for failing to secure coverage. But *Hahn* doesn't say that, and the lone federal court of appeals case that Avondale cites for that proposition is distinguishable. In *Peter v. Hess Oil Virgin Islands Corp.*, the Third Circuit considered an injured worker's negligence action under Virgin Islands law. 903 F.2d 935, 936–37 (3d Cir. 1990). The employer had obtained coverage under *both* the LHWCA *and* the relevant Virgin Islands workers' compensation act. *Id.* at 953. The court held that "where an employer has obtained workmen's compensation coverage for its LHWCA employee under both [the] LHWCA and the state or territorial statute," tort claims are preempted. *Id.* On its own terms, *Peter* does not apply where, as here, an employer has obtained coverage under the LHWCA but *not* under a state or territorial statute. Thus, contrary to Avondale's assertion at oral argument, permitting Barrosse's claims under these circumstances does not create a circuit split.[10]

---

[10] The district court supposed that Barrosse "could have sought compensation under Louisiana's Workers' Compensation Act." *Barrosse*, 563 F. Supp. 3d at 556. If that

No. 21-30761

Other cases likewise do not bear on the question before us. Some permit claims against alleged third-party tortfeasors, not employers. *Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 819–20 (2001) (permitting general maritime negligence claim against a third party); *McLaurin v. Noble Drilling (US) Inc.*, 529 F.3d 285, 292–93 (5th Cir. 2008) (holding that plaintiff did not have a vessel negligence claim but could bring a state-law tort claim against the vessel owner as a third-party tortfeasor). Others address injuries that occurred on the Outer Continental Shelf, which is outside the twilight zone. *Hebron v. Union Oil Co.*, 634 F.2d 245, 246 (5th Cir. 1981) (per curiam); *Gaudet v. Exxon Corp.*, 562 F.2d 351, 354 (5th Cir. 1977); *see LeSassier v. Chevron USA, Inc.*, 776 F.2d 506, 509 (5th Cir. 1985) (noting that Outer Continental Shelf claims do not involve the twilight zone or any other "confusing concurrent jurisdictional realm").

Most of Avondale's cited cases concern plaintiffs attempting to obtain *both* LHWCA compensation *and* damages in tort. *See Hetzel*, 50 F.3d at 367; *Levene v. Pintail Enters., Inc.*, 943 F.2d 528, 530 (5th Cir. 1991) (plaintiff filed suit under the LHWCA); *Rosetti v. Avondale Shipyards, Inc.*, 821 F.2d 1083, 1084 (5th Cir. 1987) (plaintiff received LHWCA benefits from his nominal employer then sued his borrowing employer); *White v. Bethlehem Steel Corp.*, 222 F.3d 146, 148 (4th Cir. 2000) (same); *Langfitt v. Fed. Marine Terminals, Inc.*, 647 F.3d 1116, 1119 (11th Cir. 2011) (same); *In re Buchanan Marine, L.P.*, 874 F.3d 356, 362 (2d Cir. 2017) (plaintiff received LHWCA benefits but filed a tort suit anyways). But an injured worker cannot eat his cake and have it too. Once a worker "receives LHWCA benefits," he "may not sue his employer under state law for any additional compensatory damages." *Jowers*

---

were true, *Peter* would be applicable and potentially persuasive authority. But the district court's assumption was incorrect. *See Rando*, 16 So. 3d at 1071.

11

*v. Lincoln Elec. Co.*, 617 F.3d 346, 357 (5th Cir. 2010). Instead, once a worker "elect[s] the LHWCA remedy, he is bound by the provisions of the Act," including the exclusivity provision of § 905(a). *Hetzel*, 50 F.3d at 367. That comports with the Supreme Court's instruction that § 905(a)'s exclusivity provision "gains meaning only after a litigant has been found to occupy one side or the other of the doubtful jurisdictional line." *Davis*, 317 U.S. at 256; *see Sun Ship*, 447 U.S. at 722 n.4 (clarifying that, in the twilight zone, § 905(a) "does not exclude remedies offered by other jurisdictions"); *see also Calbeck v. Travelers Ins. Co.*, 370 U.S. 114, 131 (1962) (upholding compensation payments under both the LHWCA and state law where the state payments were credited against the LHWCA payments, so "no impermissible double recovery [wa]s possible"); *Hahn*, 358 U.S. at 273 (holding that the exclusivity provision did not "prevent[] recovery" via a state-law tort claim). Barrosse did not engage in double-dipping. He has eschewed the LHWCA entirely and is only seeking compensation in tort.

Thus, even considering the cases raised by the parties and the district court, this is a *sui generis* case. We resolve this issue of first impression by holding that, on these facts and pursuant to binding jurisprudential authority, Barrosse's state-law tort claims are not preempted. As a preliminary matter, we emphasize that the category of claims we address here is small. Our holding concerns only: 1) maritime workers; 2) injured in the twilight zone; 3) in Louisiana; 4) who neither seek nor obtain LHWCA compensation; and 5) whose injuries are not covered by the relevant version of the WCA.[11]

Recall that "[c]onflict preemption applies (1) where complying with both federal law and state law is impossible; or (2) where the state law creates

---

[11] The situation presented here, where a plaintiff's choices are the LHWCA or state-law tort, may arise under other states' laws. Whether such claims are preempted should be determined on a case-by-case and state-by-state basis, so our holding is limited.

an unacceptable obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Janvey*, 712 F.3d at 200. But we may not conduct "a freewheeling judicial inquiry" to find such an obstacle, and the threshold for finding conflict preemption is "high." *Whiting*, 563 U.S. at 607. This dispute concerns only the second species of conflict preemption, so we look to whether the operation of state tort law in this case "creates an unacceptable obstacle" to the purpose of the LHWCA. *Janvey*, 712 F.3d at 200. And, in the twilight zone, the Supreme Court has interpreted the LHWCA to avoid "resurrecting the jurisdictional monstrosity that existed" prior to *Davis*. *Sun Ship*, 447 U.S. at 720. Thus, we consider conflict preemption with the understanding that the LHWCA "supplements, rather than supplants, state compensation law" and runs "concurrently with state remedies." *Id.*

The purpose that Barrosse's tort claims must not unacceptably obstruct is the "balance" between employer and employee wherein "[e]mployers relinquish[] their defenses to tort actions in exchange for limited and predictable liability," while "[e]mployees accept the limited recovery because they receive prompt relief without the expense, uncertainty, and delay that tort actions entail." *Morrison-Knudsen Constr. Co. v. Dep't of Labor*, 461 U.S. 624, 636 (1983) (citations omitted). Permitting Barrosse's claims upsets that balance to some extent. But conflict preemption is not triggered by ordinary incongruities or minor annoyances, only by "unacceptable obstacle[s]." *Janvey*, 712 F.3d at 200. Here, the Supreme Court has expressly carved out space for concurrent operation of often-asymmetrical state and federal law in the twilight zone, lessening any concern that obstacles posed by state law are "unacceptable." *Id.*; *see Sun Ship*, 447 U.S. at 723–25 (noting that "state remedial schemes" often differ from the LHWCA).

No. 21-30761

Indeed, if tort claims themselves visited any inherent frustration on Congress' goals sufficient to trigger conflict preemption, the Supreme Court would have sided with the dissent in *Hahn*, which argued that permitting tort claims in the twilight zone would "frustrate th[e] very purpose" of the LHWCA. *Hahn*, 358 U.S. at 275 (Stewart, J., dissenting). But it did not. Given the limited circumstances permitting Barrosse's claims under Louisiana law, they pose little, if any, greater obstacle to congressional purpose than the category of tort claims permitted by *Hahn*. The only difference is that the Oregon legislature in *Hahn expressly* permitted negligence claims under certain *circumstances*, while the Louisiana legislature *implicitly* permitted negligence claims for certain *injuries* by excluding those injuries from the expressed schedule of covered diseases in the WCA.

What is more, that distinction simply reflects the differing policy choices of different states, a feature of any concurrent-jurisdiction regime. Accepting Avondale's arguments is, therefore, tantamount to eliminating concurrent jurisdiction in cases like Barrosse's.[12] We do not think that mesothelioma's exclusion from the pre-1975 WCA's schedule of covered diseases "mandate[s] the result that [Barrosse] can only seek recovery under the federal compensation scheme." *DiBenedetto v. Noble Drilling Co.*, 23 So. 3d 400, 406 (La. Ct. App. 2009).[13] Instead, because the LHWCA does not "supplant[]" state law, *Sun Ship*, 447 U.S. at 720, Barrosse may pursue the

---

[12] As noted above, Avondale effectively concedes this point.

[13] Although *DiBenedetto* is a state court case and not binding here, we find it persuasive as it is the *only* case that we or the parties are aware of that addresses the factual scenario before us head on. In *DiBenedetto*, the plaintiff was injured in Louisiana, in the twilight zone, before 1975, was diagnosed with mesothelioma, did not seek LHWCA benefits, and brought a tort suit. *Id.* at 404–05. Like Avondale, the defendants argued that the LHWCA preempted his claims. *Id.* at 404. The court held that it did not. *Id.* at 405.

14

remedy available to him under that law which, as state law applies here, is *only* a tort claim. *See DiBenedetto*, 23 So. 3d at 406.

The Supreme Court has already rejected the principal arguments to the contrary. Writing separately, Justices in *Davis* and *Hahn* criticized the twilight zone as illogical, contrary to the text, beyond the power of the judiciary to create, and unfair to employers who are deprived of the benefits of the LHWCA's quid pro quo and must instead secure compensation coverage under both federal and state law. *Hahn*, 358 U.S. at 275 (Stewart, J., dissenting) (characterizing the twilight zone as "illogic"); *Davis*, 317 U.S. at 259 (Frankfurter, J., concurring) (same); *id.* at 260–62 (Stone, C.J., dissenting) (arguing that recognizing the twilight zone is not "within judicial competence . . . [,] controverts the words of the statute," and "imposes an unauthorized burden on the employer" who will be subject to liability under state law). These 80-year-old objections have yet to overcome the twilight zone. We cannot hold that they do.

In sum, our conclusion that conflict preemption does not apply is supported by the existence of concurrent jurisdiction and the acceptable incongruity inherent therein, the Supreme Court's consistent rejection of arguments resisting that regime, the LHWCA's role of supplementing rather than supplanting state law, the limited category of claims at issue here, and the similarity between these claims and those the Supreme Court has already permitted in *Hahn*.

## IV

The Supreme Court has recognized a twilight zone of concurrent jurisdiction, permitted by the LHWCA, in cases like this one. We are duty-bound to interpret and apply the law consistent with that guidance. Here, that means preserving concurrent jurisdiction in the twilight zone and avoiding the resurrection of a "jurisdictional monstrosity" by allowing Barrosse's

state-law tort claims to proceed. *Sun Ship*, 447 U.S. at 720. We reiterate the highly unusual fact pattern that brought Barrosse to this point and reemphasize that our holding is narrow. It is only through the peculiar nature and application of Louisiana's pre-1975 worker's compensation statute, combined with the other characteristics of this case listed above, that Barrosse's claims survive preemption. We accordingly REVERSE and REMAND for further proceedings consistent with this opinion.