**Kendrick STODDARD, Plaintiff,**

v.

**WEST TELEMARKETING, L.P., Defendant.**

**No. EP–06–CV–259–PRM.**

United States District Court, W.D. Texas, El Paso Division.

July 31, 2007.

Steven C. James, El Paso, TX, for Plaintiff.

Joe T. Sanders, II, Julie A. Springer, Scott, Douglass & McConnico, Austin, TX, Ruben S. Robles, Robles, Bracken, Coffman & Hughes, El Paso, TX, for Defendant.

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MARTINEZ, District Judge.

On this day, the Court considered (1) Defendant West Telemarketing, L.P.'s ("West") "Motion for Summary Judgment" and accompanying appendix, filed under seal on April 13, 2007; (2) Plaintiff Kendrick Stoddard's ("Stoddard") "Response to Defendant's Motion for Summary Judgment," filed under seal on April 23, 2007; (3) West's "Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment," filed under seal on May 4, 2007; and (4) West's "Objections to and Motion to Strike Plaintiff's Summary Judgment Evidence," filed under seal on May 4, 2007, in the above-captioned cause. After careful consideration, the Court is of the opinion that West's Motion for Summary Judgment should be denied as to the claims of discrimination and as to the claims of libel, but granted as to the claim of slander for the reasons set forth below.

### I. FACTUAL BACKGROUND

West is a Delaware limited partnership doing business in El Paso, Texas. Pl.'s Am. Compl. 1, ¶ 2. Stoddard, the plaintiff in the instant case, began working for a West affiliate, West Telemarketing Corporation Outbound n/k/a West Business Services, L.P., in early 1999. Def.'s Am. Answer ¶ 4. Stoddard was promoted to Director of Site Operations for the El Paso Site in January, 2004. Def.'s Mot. for Summ. J., App., Ex. 4. He began working for West in August, 2004, when West took over the El Paso site from its affiliate. Id., App., Ex. 6. When West took over the site, Stoddard's title was "Acting Site Director," and he was promoted to Site Director in January, 2005. Def.'s Am. Answer ¶ 4. In that role, Stoddard was the highest ranking West employee in El Paso, and reported directly to Matthew V. Driscoll, then the Vice President of Client Operations and current Senior Vice President of Client Operations, whose office was located in Omaha, Nebraska. Def.'s Mot. for Summ. J., App. Ex. 6. Two Operations Managers, Best Ihegborow and Aida Morales, reported directly to Stoddard along with Kathy Beltran, the Site Assistant. Id., App., Ex. 5 at 73. Other employees in El Paso reported to either Ihegborow or Morales. Id., App., Ex. 5 at 74–75.

Stoddard is an African–American man. Pl.'s Am. Compl. ¶ 7. He was terminated

on or about January 19, 2006. *Id.* ¶ 21. This occurred after an internal investigation was performed by Kimberly Johnston, a West employee who was based in Spokane, Washington. Def.'s Mot. for Summ. J., App. 14. Johnston reported to Norma Schmelling, who is the Vice–President of Corporate Employee Relations ("ER"), and is therefore responsible for employee relations at all West sites. *Id.*, App. 8. The investigation was initiated because ER had received an anonymous letter which alleged unprofessional behavior by Stoddard and other West employees at the El Paso site. *Id.*, App. 13. Johnston submitted a report to Schmelling on January 3, 2007, detailing the results of her investigation. *Id.*, App. 15. The report listed allegations made in the letter regarding inappropriate behavior by management of the El Paso site, results of inquiries Johnston made both to staff of the site and to Stoddard, and her recommendations with regard to each particular allegation. Pl.'s Mot. for Summ. J., App., Ex. 4.

Johnston's report included instances of behavior West asserts is inappropriate: attendance by Stoddard and other management personnel at a party in April, 2005, along with staff, during which sexually suggestive "lap dances" were performed for Stoddard and Morales. *Id.*, App., Ex. 4. The party was a surprise birthday party for Stoddard and Morales, and was located off-site. *Id.*, App., Ex. 4. Johnston also reported a rumored relationship between Stoddard and another employee, Tonya Randolph, a claim which Stoddard denies, but Johnston noted Randolph performed the sexually suggestive dance for Stoddard. *Id.*, App., Ex. 4. There were allega-

tions of drug use on site, for which Johnston noted there was little evidence. *Id.*, App., Ex. 4. Allegations that Stoddard gave preferential treatment to Randolph were addressed, Johnston noting that Stoddard admitted he "had failed to maintain professional boundaries." *Id.*, App., Ex. 4. Johnston also reported a series of incidents involving Randolph in 2005. *Id.*, App., Ex. 4. Randolph was arrested in August of that year, and reported that directly to Stoddard, rather than her supervisor, Morales, and while Stoddard did report the arrest to Morales, neither Stoddard nor Morales reported the arrest to ER, which was their duty, according to West policy. *Id.*, App., Ex. 4. In October, 2005, Randolph, while intoxicated, made threatening remarks to Morales at a local bar, resulting in her removal from the bar. *Id.*, App., Ex. 4. Morales reported the incident to ER, which investigated and recommended Randolph's termination. Stoddard discussed the issue with ER, and Randolph was disciplined and transferred, but not terminated.[1]

After Johnston's report was submitted to Schmelling, Stoddard was terminated on or about January 19, 2006. Def.'s Mot. for Summ. J., App. 16–17. West claims that the acts detailed in the report constitute unprofessional behavior and are examples of poor judgment, and that Stoddard was terminated for these reasons, and not his race. *Id.*, App. 17.

Stoddard argues that ER was aware of each instance before the investigation began, that he had not previously been disciplined, that Morales's behavior was similar to his and she was not disciplined in any way. Pl.'s Resp. to Def.'s Mot. for Summ.

---

1. Johnston reported that, when Stoddard and ER discussed whether termination was appropriate for Randolph, ER was not aware of the rumor Stoddard and Randolph were involved in a personal relationship. Stoddard contends that ER was aware of rumors, and that both he and the local ER representative argued for Randolph to be disciplined rather than terminated because of concerns she would initiate a lawsuit claiming her termination was retaliation for her complaints about Morales prior to the incident at the bar. Pl.'s Resp. to Def.'s Mot. for Summ. J.App., Schmelling Dep. 95–96.

J., App. 2–3. Stoddard alleges that the report, as prepared by Johnston, did not recommend his termination and included positive remarks about his performance, and that Schmelling altered the report to remove any positive remark about him and recommended termination for the first time. *Id.,* App. 2. Further, Stoddard alleges that Schmelling's intent in making the alterations was for him to be terminated, and that this intent was based on a discriminatory animus against African–Americans. *Id.,* App. 1–2. He cites Schmelling's interest in a case against West by another African–American employee in El Paso as support for his allegations. *Id.,* App. 1–2. In that case, it was found that West had discriminated against the employee, who was awarded damages. *Id.,* App. 3. The result of that case was upheld on appeal. *Id.,* App. 3. Stoddard alleges Schmelling recommended his termination because of her disappointment with that case. *Id.,* App. 4.

Stoddard alleges his discharge constituted violations of rights governed by: (1) Title VII, as amended, 42 U.S.C. § 2000e *et seq.* (West 2007); (2) the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab.Code Ann. § 21.051 (Vernon 2007); (3) the Civil Rights Act of 1866, 42 U.S.C. § 1981 (" § 1981"); and (4) Texas law of slander and libel, Tex. Civ. Prac. & Rem.Code Ann. § 73.001 (Vernon 2007). West has filed a motion for summary judgment, asserting: (1) that Stoddard was terminated for legitimate nondiscriminatory business reasons, (2) that no rational factfinder could conclude that the reasons for his termination were discriminatory, and (3) that the allegedly defamatory statements were (a) privileged and (b) made in the absence of malice.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) mandates summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c) (2007). When the moving party has established that there is no genuine issue, "the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial." *Matthews v. United Bhd. of Carpenters and Joiners of Am. et al.,* No. 06–30407, 228 Fed.Appx. 436, 438–39, 2007 U.S.App. LEXIS 9059, at *4–*5 (5th Cir. Apr.18, 2007) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). This cannot be accomplished by relying on allegations, denials, or unsubstantiated assertions, but rather the nonmoving party must, " 'set forth specific facts showing the existence of a "genuine" issue concerning every essential component of its case.' " *Id.,* 228 Fed.Appx. 436, 439–40, 2007 U.S.App. LEXIS 9059, at *5 (quoting *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

## III. DISCRIMINATION: Title VII, § 1981, and TCHRA

### A. Legal Standard

 Under Title VII, it is "an unlawful employment practice for an employer ... to discharge ... any individual ... because of such individual's race." 42 U.S.C. § 2000e–2(a). "The standard of proof for Title VII discrimination claims also applies to § 1981 claims." *Roberson v. Alltel Info. Servs.,* 373 F.3d 647, 651 (5th Cir.2004) (citing *Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 403 n. 2 (5th Cir.1999)). TCHRA claims are also analyzed under Title VII precedent. *Wallace v. Methodist Hosp. Sys.,* 271 F.3d 212, 220 n. 10 (5th Cir.2001). Because these "three

statutory bases are functionally identical for the purposes of" Stoddard's claims, Shackelford, 190 F.3d at 404 n. 2, the term "Title VII" will be used to refer to all three.

■ Title VII disparate treatment discrimination claims can be established through either direct or circumstantial evidence. *See U.S. Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 714 n. 3, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) ("As in any lawsuit, the plaintiff [in a discrimination case] may prove his case by direct or circumstantial evidence."); *Ceasar v. N. Star Steel Tex., Inc.,* 69 F.Supp.2d 858, 865–66 (E.D.Tex.1999) (holding that "[a] plaintiff alleging employment discrimination need not come forward with direct evidence of discriminatory intent in order to avoid summary judgment").

■ In the absence of direct evidence of discriminatory intent, as is typically the case, proof via circumstantial evidence is assembled using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (noting that "there will seldom be eyewitness testimony as to the employer's mental processes" and that the Fifth Circuit has "employed some variant of the framework articulated in *McDonnell Douglas* to analyze ADEA claims that are based principally on circumstantial evidence") (internal citations and quotations omitted).

Accordingly, because Stoddard has not presented any direct evidence of race discrimination, the Court applies the burden-shifting analytical framework established in *McDonnell Douglas. Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 896–97 (5th Cir.2002). Under the *McDonnell Douglas* framework, the Court employs a three-part test designed to ascertain a de-fendant's motivation in taking the challenged action. *McDonnell Douglas Corp.,* 411 U.S. at 803–04, 93 S.Ct. 1817.

■ Under the test, a plaintiff must first establish a prima facie case of discrimination. *Russell v. McKinney Hosp. Venture,* 235 F.3d 219, 222 (5th Cir.2000). The prima facie elements are that the plaintiff (1) is a member of a protected class under the statute, (2) was qualified for the position held, (3) was dismissed from that position, (4) and was replaced with a similarly qualified person who was not a member of the employee's protected group or, "in the case of disparate treatment, shows that 'others similarly situated' were treated more favorably." *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.,* 245 F.3d 507, 512–13 (5th Cir.2001) (quoting *Shackelford,* 190 F.3d at 404). *See also Allen v. Solo Cup Co.,* 2006 WL 1949455, *8, 2006 U.S. Dist. LEXIS 47593, at *25 (N.D.Tex. July 13, 2006). In this case, West does not argue that Stoddard has not established a prima facie case.

■ Once a plaintiff establishes his prima facie case, a presumption of discrimination arises. *Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 957 (5th Cir.1993). In order to rebut the presumption, the burden shifts to the defendant to articulate a "legitimate, non discriminatory reason" for the alleged discriminatory action. *Russell,* 235 F.3d at 222. The defendant must introduce admissible evidence, which, "*if believed by the trier of fact,* would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ If the defendant satisfies this burden, the presumption of discrimination established by the plaintiff's prima facie case " 'disappears and the plaintiff must meet [the] ultimate burden on the issue of

intentional discrimination.' " *Matthews*, 228 Fed.Appx. at 439 (quoting *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). The plaintiff may still meet his ultimate burden by producing evidence "either that the defendant's proffered nondiscriminatory reasons are false or, if true, that his protected characteristic was, nevertheless, a motivating factor for the adverse employment action." *Id.*, 228 Fed.Appx. at 439 (citing *Reeves*, 530 U.S. at 148, 120 S.Ct. 2097). Because West moved for summary judgment, Stoddard does not need to actually prove that West's proffered reason is false or that the protected characteristic was a motivating factor. *Bodenheimer*, 5 F.3d at 958. Rather, the Court must determine if Stoddard "tendered factual evidence that could lead a jury to reasonably conclude" either that the reason is false or that his race was a motivating factor. *Id.*

█ If the trier of fact were to find West had a legitimate reason to terminate Stoddard, whether or not race was a motivating factor will be evaluated under the modified *McDonnell Douglas* approach discussed in *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 (5th Cir.2004), where the Fifth Circuit incorporated the Supreme Court's holding in *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). The modified approach changes the third stage of the *McDonnell Douglas* scheme to accommodate the mixed motive analysis. *Rachid*, 376 F.3d at 312. "If mixed-motive is shown, the employer must then show that it would have taken the same action regardless of the discriminatory motive". *Mayberry v. Mundy Contract Maint. Inc.*, 197 Fed.Appx. 314, 316 (5th Cir.2006) (citing *Rachid*, 376 F.3d at 312).

█ In this case, Stoddard contends that West discriminated against him by treating him differently from other simi-

larly situated employees. Thus, the claims are evaluated as disparate treatment claims, rather than disparate impact claims, which "do not require proof of intent to discriminate. [Disparate impact claims] focus on facially neutral employment practices that create such statistical disparities disadvantaging members of a protected group that they are 'functionally equivalent to intentional discrimination.' " *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir.2000) (quoting *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 987, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988)). Disparate treatment, on the other hand, refers to "deliberate discrimination in the terms or conditions of employment, . . . on account of race, national origin, or gender." *Id.*

### B. Analysis

#### 1. Prima Facie Presumption Defeated by Legitimate, Non–Discriminatory Reason

█ In its Motion for Summary Judgment, West does not contest that Stoddard established a prima facie case of discrimination and that the burden shifted to West to articulate a legitimate business reason for the decision to terminate. *Russell*, 235 F.3d at 222. West asserts Stoddard was terminated for "unprofessional behavior and failure to demonstrate the level of judgment expected of a Site Director". Def.'s Mot. for Summ. J. 3. West asserts the termination was a result of an "investigation involving numerous employees," the results of which were summarized in a report given to Stoddard's supervisor, Driscoll. *Id.* at 6. West submitted a Statement of Facts, supported by affidavits, excerpts of depositions, copies of correspondence between West's affiliate and Stoddard, copies of correspondence among West employees regarding Stoddard's employment, and other documents to support its assertions. It claims that this evidence

is sufficient, *"if believed by the trier of fact,* [to] support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr.,* 509 U.S. at 507, 113 S.Ct. 2742 (1993) (internal citation omitted).

West alleges Stoddard was the "highest-ranking member of management at the El Paso facility." Def.'s Mot. for Summ. J., App. 5. As such, "West held Stoddard to a higher standard in terms of his behavior, particularly with subordinates and in the presence of subordinates, than other members of management at the site." *Id.,* App. 7. The specific instances cited as giving rise to Stoddard's termination are: (1) a birthday party given for Stoddard and Morales at which both received sexually suggestive dances from other employees, (2) Stoddard receiving a sexually suggestive dance from Tonya Randolph, another West employee with whom Stoddard was rumored to be having an affair, at the birthday party, (3) Stoddard failing to report or ensure that Randolph reported her being absent from work because of an arrest for theft, (4) Stoddard disagreeing with the recommendation of Employee Relations personnel about the level of discipline Randolph should receive after making threats to Morales, (5) and an anonymous letter received by West apparently from El Paso employees alleging, among other things, Stoddard had received a sexually suggestive dance in front of staff, that Stoddard and Randolph were dating, and that Stoddard showed favoritism to Randolph. *Id.* at 3–4.

This evidence, if believed, meets the burden of production required by *McDon-*

*nell Douglas* by articulating a legitimate, non-discriminatory reason for termination, and defeats the presumption of discrimination raised by the plaintiff's establishing a prima facie case. The Court finds that West has met its burden of articulating a legitimate, non-discriminatory reason for Stoddard's termination. *Walton v. Bisco Indus., Inc.,* 119 F.3d 368, 370 (5th Cir. 1997). In order for Stoddard's claim to survive summary judgment, it is necessary for him to "offer sufficient evidence to create a genuine issue of material fact 'either (1) that [West's] reason is not true, but is instead a pretext for discrimination ... or (2) that [West's] reason, while true, is only one of the reasons for his termination, and another 'motivating factor' is" Stoddard's race. *Rachid,* 376 F.3d at 312 (quoting *Rishel v. Nationwide Mut. Ins. Co.,* 297 F.Supp.2d 854, 865 (M.D.N.C. 2003)).

### 2. Evidence of Pretext or Mixed Motives

For purposes of deciding a motion for summary judgment, the Court need only determine if Stoddard has "tendered factual evidence that would lead a jury to reasonably conclude that" West's reasons are a pretext for discrimination or that race was a motivating factor. *Id.* Stoddard agrees that most of the behavior West cites as reasons for his termination occurred. However, he offers evidence (1) that the Johnston report did not disclose any information not previously reported to the ER department;[2] (2) that the report was altered by Schmelling before it was given to Driscoll, who did not know of the alterations;[3] (3) that Morales behaved in

---

**2.** Stoddard presents deposition testimony to show that Randolph and/or Schmelling were notified about the rumored affair, the birthday party with sexually suggestive dances, and Randolph's arrest before Randolph began the investigation. *Id.,* App., Kleinhans Dep. 30–31, 46–48; *Id.,* App., Stoddard Dep. 128–

29; *Id.,* App., Schmelling Dep. 96, Stoddard also asserts he made Driscoll aware of the party and sexually suggestive dances personally. *Id.,* App., Stoddard Dep. 100–02; *id.,* App., Driscoll Dep. 24.

**3.** *Id.,* App., Exs. 3 and 4; *Id.,* App., Schmelling Dep. 25–26, 30–35.

similar ways, was subject to the same policies and standards as Stoddard, was not African–American, and was not terminated or disciplined,[4] (4) that other serious allegations made in the anonymous letter were not investigated,[5] and (5) that Schmelling was very interested in and upset by another race discrimination case against West in El Paso.[6] He argues that the report, as altered by Schmelling, asserts ER had not been informed of a rumor that Stoddard was involved in an inappropriate relationship with an employee and alleges that Linda Kleinhans, the El Paso ER representative, had informed Johnston of the rumor long before the investigation. Pl.'s Resp. to Def.'s Mot. for Summ. J. 5. He asserts Kleinhans investigated and reported to ER about the birthday party given for Stoddard and Morales and the sexually suggestive dances which were performed there. *Id.* at 6. He also asserts that he had personally reported the dances to Driscoll prior to Johnson beginning her investigation. *Id.*

■■■ Stoddard asserts that Schmelling was a "cat's paw":[7] that her discriminatory conduct should be imputed to Driscoll, the ultimate decision-maker for West in this instance. *Id.* at. 2–3. In order for the Court to impute Schmelling's conduct to Driscoll through the "cat's paw" analysis, he must establish (1) that Schmelling "exhibited discriminatory animus" and (2) that she "possessed leverage, or exerted influence, over the titular decisionmaker." *Roberson*, 373 F.3d at 653. In *Roberson*, the plaintiff alleged that his supervisor's actions in not giving him training or assignments should have been imputed to the

Human Resources Manager who had included the plaintiff on a reduction-in-force list in part because of his lack of training and experience. *Id.* at 653–54. The plaintiff in that case was not able to come forward with any specific evidence, other than his subjective belief, (1) that his supervisor had any control over whether the plaintiff received training or assignments, (2) that any decisions his supervisor made with regard to training and assignment of work were made on any illegal basis, or (3) that his supervisor exerted any sort of influence or leverage over the final decision maker. *Id.*

In *Lawrence v. Univ. of Texas Med. Branch*, 163 F.3d 309, 313 (5th Cir.1999), a district court's granting summary judgment was upheld when the plaintiff failed to "raise fact issues that the reason [given by defendant] for the employment decision was false and that discrimination was the real reason." In *Lawrence*, the plaintiff was only able to present her own "affidavit regarding the terms and nature of her employment, her job title and description, her performance, her credentials, and the credentials" of her supervisors and the person who was hired for the position for which she had interviewed. *Id.*

Unlike *Roberson* or *Lawrence*, the evidence presented regarding Schmelling's interest in the previous claim of discrimination against West, which resulted in an adverse jury verdict, her discussing Stoddard's termination by referring to that case, and her altering Johnston's report, is specific and not "just speculation and conjecture." *Id.* at 312. It therefore may be

---

4. *Id.*, App., Johnston Dep. 7, 24–25, 50, 84–85; *id.*, App., Morales Dep. 8–9, 36–37, 40–44; *id.*, App., Exs. 5–6.

5. *Id.*, App., Johnston Dep. 38–39, 94–98.

6. *Id.*, App., Schmelling Dep. 12–16, 134–35.

7. A "cat's paw" is defined by MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 181 (10th ed.2001) as "[fr. the fable of the monkey that used a cat's paw to draw chestnuts from the fire]: one used by another as a tool: dupe."

sufficient to convince a trier of fact that she exhibited discriminatory animus. Stoddard also presents specific evidence about whether Schmelling's acts influenced Driscoll. He presents a deposition in which Driscoll admits that prior to terminating Stoddard, he read the report Schmelling had altered without knowing it was altered, and without knowing that Johnston had not recommended that Stoddard be terminated in the report she submitted. Pl.'s Resp. to Def.'s Mot. for Summ. J., App., Driscoll Dep. 19–20. This is specific evidence that could lead a reasonable trier of fact to find Schmelling exerted influence over Driscoll. Thus, the Court concludes a reasonable trier of fact could find Schmelling was a "cat's paw" in this instance.

West claims it is entitled to the "same actor" inference approved by the 5th Circuit in *Brown v. CSC Logic, Inc.,* 82 F.3d 651 (5th Cir.1996). In *Brown,* the 5th Circuit found that, " 'claims that employer animus exists in termination but not in hiring seem irrational.' " *Brown,* 82 F.3d at 658. (quoting *Proud v. Stone,* 945 F.2d 796, 797 (4th Cir.1991)). Stoddard argues that West is not entitled to the inference because West did not hire him, rather retaining him in the same position he had held before West assumed operations at the El Paso site from the West affiliate. Pl.'s Resp. to Def.'s Mot. for Summ. J., App. 13. However, among the evidence West has produced for summary judgment are documents which show that when West took over, Stoddard was the acting Site Director, and that Driscoll approved his being hired on a permanent basis by West. Def.'s Mot. for Summ. J., App., Ex. 7. In *Sreeram v. La. State Univ. Med. Ctr.-Shreveport,* 188 F.3d 314 (5th Cir.1999), the Court of Appeals upheld a district court's granting of summary judgment to a defendant hospital. The district court had granted the defendant the "same actor" inference because one of the doctors alleged to have discriminated against the plaintiff in her dismissal had previously granted the plaintiff's request to stay in the residency program despite a recommendation that she be terminated. *Sreeram,* 188 F.3d at 321. In that case, it was enough that one of a few people who together made the decision to terminate the plaintiff had previously made a decision to keep her. In this case, Driscoll apparently decided to keep Stoddard in his position, which might be enough to entitle him to the "same actor" inference. However, even if Driscoll is entitled to the "same actor" inference, because the trier of fact may reasonably find that Schmelling's animus can be imputed to Driscoll as discussed above, the benefit of that inference is not enough to entitle West to summary judgment. This is because, if Schmelling is found to have been a "cat's paw," it would be her discriminatory animus, not that of Driscoll, which contributed to Stoddard's termination, and even if Driscoll did not actually possess the discriminatory animus, or is entitled to an inference of such, it is not his mental state to which the Court will look, but Schmelling's.

### C. West's Objections to Stoddard's Summary Judgment Evidence

Stoddard presents other evidence, some of which is presented to show that other employees were similarly situated in nearly identical circumstances and treated differently. West objects to much of that evidence, but because the Court finds that evidence of a discriminatory animus imputed to the ultimate decision-maker is sufficient for the claim to survive summary judgment, the Court did not consider Stoddard's evidence regarding other employees in reaching its decision. Therefore, the Court makes no ruling about the admissibility of that evidence and declines to make any judgment about its validity or whether, in the absence of other evidence, it

would be sufficient to withstand West's Motion for Summary Judgment.

West has objected to some of the evidence proffered by Stoddard, arguing that it would not be admissible at trial, and so is not competent summary judgment evidence. Def. Objections to and Mot. to Strike Pl.'s Summ. J. Evidence 1. Because many of the objections are to evidence not considered by the Court in denying the Motion for Summary Judgment, those objections will be overruled as moot.

Only one of West's objections addresses evidence upon which the Court has relied in this Order. West objected to evidence Stoddard offered in the form of deposition testimony by Norma Schmelling about her interest *in another case in which a former West employee alleged her termination was racially motivated.* West objected to the evidence as irrelevant. Because Stoddard argues that Schmelling's interest in the case is a cause of her discriminatory animus and that she is a "cat's paw" in this case, it is relevant to establishing either a pretext for the termination or that race was a motivating factor in the decision. For that reason, the Court is of the opinion that the objection should be overruled as to any evidence otherwise admissible that tends to show a discriminatory animus on the part of Schmelling.

### D. Conclusion

■■■ "Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima

facie case, the probative value of the proof that the employer's explanation is false, and any other [appropriate] evidence that supports the employer's case...." *Reeves,* 530 U.S. at 148–49, 120 S.Ct. 2097. In the instant case, Stoddard has established a prima facie case, which West does not contest, and although West rebutted the presumption raised by that prima facie case by articulating a legitimate, non-discriminatory reason for termination, the Court finds that Stoddard was able to come forward with evidence sufficient that a reasonable trier of fact might find (1) that the reason was a pretext for discriminatory treatment or (2) that West had mixed motives in terminating Stoddard, one motivating factor of which was his race. Therefore, after due consideration, the Court is of the opinion that West's Motion for Summary Judgment should be denied as to the claims of discrimination.

### IV. SLANDER/LIBEL

Stoddard alleged slander and libel in his "First Amended Original Complaint," and specified the event he alleges constituted libel in his "Response to Defendant's Motion for Summary Judgment." [8] He claims the report, as altered by Schmelling, constituted libel in the section entitled, "Disciplinary Action for Kendrick Stoddard, DSO." [9] West claims that any communications made with respect to Stoddard's termination were privileged. Stoddard asserts that if the communications were privileged *that the privilege is defeated by Schmelling's actual malice.*

---

8. The Court notes that in his recent pleadings, Stoddard has apparently dropped his claim of slander, and both parties have confirmed with the Court that slander is not currently an issue in this case. The Court will, therefore, dismiss the claim of slander.

9. The relevant part of the section states,

Through his actions, Kendrick has failed to follow and enforce West policy. He has

also failed to hold his managers accountable for same. He has undermined his authority and shown extremely poor judgment by not only fraternizing with employees after hours but allowing sexually explicit action (lap dancing by employees) to occur. The latter creates liability for the company as it could be perceived as contributing to a hostile work environment. Pl.'s Resp. to Def.'s Mot. for Summ. J.App., Ex. 3.

874

### A. Legal Standard

 "Defamation is a false statement about a plaintiff published to a third person without legal excuse which damages the plaintiff's reputation." *Moore v. Waldrop,* 166 S.W.3d 380, 384 (Tex.App.-Waco [10th Dist.] 2005, no pet.). Libel in Texas is, "a defamation expressed in written ... form that ... tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation...." TEX. CIV. PRAC. & REM.CODE ANN. § 73.001 (Vernon 2007). "Slander is orally communicated defamation." *Moore,* 166 S.W.3d at 384. In order to prevail on a claim of defamation, Stoddard will need to show (1) West "published a statement of facts, (2) the statement referred to [Stoddard], (3) the statement was defamatory, and (4) [West] acted with negligence regarding the truth of the published statements." *Henriquez v. Cemex Mgmt. Inc.,* 177 S.W.3d 241, 251 (Tex. App.-Houston [1st Dist.] 2005, pet. denied). Whether a communication is defamatory is, initially, a question of law, and to make that determination, the Court will look to how a person of ordinary intelligence would perceive the statement as a whole, and "whether the words used are reasonably capable of defamatory meaning." *Robertson v. Southwestern Bell Yellow Pages, Inc.,* 190 S.W.3d 899, 902 (Tex. App.-Dallas [5th Dist.] 2006, no pet.).

 West claims the statements in the Schmelling report are protected by a qualified privilege. "An employer has a conditional or qualified privilege that attaches to communications made in the course of an investigation following a report of employee wrongdoing." *Henriquez,* 177 S.W.3d at 252–53.

[C]ommunications between company principals and employees, including communications concerning the termination of an employee, have been held to be protected by this privilege. [However, p]roof that a statement was motivated by actual malice, existing at the time of publication [sic] defeats the privilege.... [A] statement is made with actual malice when it is made with knowledge of its falsity or with reckless disregard as to its truth. Reckless disregard is a high degree of awareness that the statement is probably false. To invoke the privilege on a summary judgment [motion, the defendant] must conclusively establish that the allegedly defamatory statements were made with an absence of malice.

*Id.* at 253 (internal quotations and citations omitted). "In the context of a summary judgment, if the defendant ... offers evidence that is 'clear, positive and direct,' even if such evidence is from an interested witness, establishing the lack of actual malice, the plaintiff must offer controverting proof to establish a fact issue as to malice." *Id.* at 254.

### B. Analysis

Stoddard alleges that the report Schmelling sent to Driscoll constituted libel in the section entitled "Disciplinary Action for Kendrick Stoddard, D.S.O."[10] Pl.'s Resp. to Def.'s Mot. for Summ. J. 8. Stoddard alleges the report falsely states: (1) Stoddard failed to follow and enforce West policy, (2) Stoddard failed to hold

---

**10.** Stoddard alleges, "[West] slandered or libeled Mr. Stoddard in his business, office or profession. It is per se slander and libel. The slander or libel is a proximate cause of damage to Mr. Stoddard's reputation in his business, office or profession and mental anguish. It was done with malice by Norma Schmelling in the false statements she included about Mr. Stoddard in the Johnston report she secretively altered and had provided to Mr. Driscoll on or about in January 6, 2006." Pl.'s First Am. Original Compl. ¶ 30.

managers accountable to West policy, (3) Stoddard "got MR pregnant," (4) Stoddard "undermined his authority," (5) Stoddard showed extremely poor judgment, and (6) Stoddard lacks professionalism. *Id.* at 10 (referring to Pl.'s Resp. to Def.'s Mot. for Summ. J.App., Ex. 3). Stoddard asserts these statements were false and made with "actual malice ... [because they were] made with knowledge of [their] falsity or with reckless disregard for the truth." *Id.* at 8 (citing *Hagler v. Proctor & Gamble Mfg. Co.*, 884 S.W.2d 771, 772 (Tex.1994)). In West's "Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment," it asserts that the statements are opinions or conclusions, rather than statements of fact, which implies that they were not made with "knowledge of [their] falsity or ... reckless disregard for the truth." Def.'s Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J. 5.

West also claims it is entitled to summary judgment on Stoddard's libel claim because the statements were "privileged and made in the absence of malice." Def.'s Mot. for Summ. J. 10. West asserts that Stoddard did not show Schmelling knew or recklessly disregarded the truth in amending Johnston's report. *Id.* West presents Schmelling's affidavit, in which she states,

> At the time I changed the recommendations in Ms. Johnston's initial Summary, I relied on Ms. Johnston's findings, and I believed that every statement that I included in the revised Summary was true. I did not entertain any doubts about the truth of any of the statements I included in the revised Summary.

*Id.* App. Ex. 12 ¶ 8.

Taking the evidence in the light most favorable to Stoddard, as the Court must, *Matthews*, 228 Fed.Appx. 436, 437–38, it is possible that a person of ordinary intelligence might understand the language, taken as a whole, to consist of statements of fact, which Stoddard asserts are false. Therefore, the statements may be defamatory. West is correct, and Stoddard does not dispute, that the communications were made in connection with an "investigation following a report of employee wrongdoing," so application of the privilege is appropriate. *Henriquez*, 177 S.W.3d at 252–53. However, Stoddard argues that the communications were made with actual malice. The only evidence West presents to show a lack thereof is Schmelling's affidavit, which, by itself, falls short of the "clear, positive and direct" standard used in *Henriquez*.

### C. Conclusion

The Court is of the opinion that Stoddard has raised issues of fact as to whether the statements are (1) opinions or statements of fact, and (2) whether or not they were made with actual malice as that term is applied to libel in Texas. Because West has not come forward with "clear, positive and direct" evidence showing a lack of actual malice, nor seriously contested Stoddard's description of the communications as defamatory, the Court is of the opinion that summary judgment is not appropriate on this issue.

## V. CONCLUSION

As discussed above, the Court finds that summary judgment is not appropriate as to the claims of discrimination and libel. Stoddard has raised genuine issues of fact to be determined by a trier of fact. Therefore, the Court is of the opinion that Defendant's "Motion for Summary Judgment" should be denied as to these claims. Since Stoddard has not to presented any evidence supporting a claim for slander, summary judgment as to that issue should be granted.

Accordingly, **IT IS ORDERED** that Defendant West Telemarketing, L.P.'s "Ob-

jections to and Motion to Strike Plaintiff's Summary Judgment Evidence" are **OVERRULED.**

**IT IS FURTHER ORDERED** that Defendant West Telemarketing, L.P.'s "Motion for Summary Judgment" is **DENIED IN PART** as to the Title VII, § 1981, TCHRA, and libel claims.

**IT IS FURTHER ORDERED** that Defendant West Telemarketing, L.P.'s "Motion for Summary Judgment" is **GRANTED IN PART** as to the claims of slander.

**IT IS FINALLY ORDERED** that Plaintiff Kendrick J. Stoddard's claim of slander against Defendant West Telemarketing, L.P. is hereby **DISMISSED.**