Kendrick **STODDARD**, Plaintiff,

v.

**WEST TELEMARKETING, L.P.**, Defendant.

No. EP–06–CV–259–PRM.

United States District Court, W.D. Texas, El Paso Division.

March 28, 2008.

Steven C. James, El Paso, TX, for Plaintiff.

Joe T. Sanders, II, Julie A. Springer Scott, Douglass & McConnico Austin, TX, Ruben S. Robles, Robles, Bracken & Hughes, El Paso, TX, for Defendant.

*MEMORANDUM OPINION AND OR-DER GRANTING DEFENDANT'S RENEWED MOTION FOR JUDG-MENT AS A MATTER OF LAW AND DENYING PLAINTIFF'S MO-TION FOR ENTRY OF JUDGMENT*

PHILIP R. MARTINEZ, District Judge.

On this day, the Court considered (1) Defendant West Telemarketing, L.P.'s ("West") "Renewed Motion for Judgment as a Matter of Law," filed August 15, 2007; (2) Plaintiff Kendrick Stoddard's ("Stoddard") "Response to Defendant's Renewed Motion for Judgment as a Matter of Law," filed on August 27, 2007; (3) West's "Reply to Plaintiff's Response to Defendant's Renewed Motion for Judgment as a Matter of Law," filed on September 6, 2007; (4) Stoddard's "Motion for Entry of Judgment," filed on August 8, 2007; and (5) West's "Response in Opposition to Plaintiff's Motion for Entry of Judgment," filed on August 17, 2007, in the above-captioned cause. After careful consideration, the Court is of the opinion that West's Renewed Motion for Judgment as a Matter of Law should be granted and Stoddard's Motion for Entry of Judgment denied for the reasons set forth below.

## I. BACKGROUND

### A. Factual Background

West is a Delaware limited partnership doing business in El Paso, Texas. Pl.'s Am. Compl. 1, ¶ 2. Stoddard began working for a West affiliate, West Telemarketing Corporation Outbound n/k/a West Business Services, L.P., in El Paso, Texas, in early 1999. Def.'s Am. Answer ¶ 4. Stoddard was promoted to Site Director in January, 2005, after West took over the site from its affiliate. *Id.* ¶ 4. As Site Director, Stoddard was the highest ranking West employee in El Paso, and re-ported directly to Matthew V. Driscoll ("Driscoll"), then Vice President of Client Operations. Def.'s Mot. for Summ. J., App. Ex. 6.

West terminated Stoddard on or about January 19, 2006, following an internal investigation performed by Kimberly Johnston ("Johnston"). Def.'s Mot. for Summ. J., App. 14. Johnston, then a Regional Employee Relations Manager, reported to Norma Schmelling ("Schmelling"), Vice President of Corporate Employee Relations. *Id.*, App. 8. The investigation began after Employee Relations ("ER") received an anonymous letter which alleged unprofessional behavior at the El Paso site. *Id.*, App. 13. On January 3, 2006, Johnston submitted a report to Schmelling detailing the results of her investigation. *Id.*, App. 15. The report listed the allegations made in the letter regarding inappropriate behavior, the results of inquiries Johnston made with respect to the allegations, and Johnston's recommendations with respect to each allegation. Pl.'s Resp. to Def.'s Mot. for Summ. J., App., Ex. 4. The report, as prepared by Johnston (hereinafter referred to as Johnston's report), did not specifically recommend Stoddard's termination, and included both positive and negative comments about his performance, along with a recommendation that his conduct be monitored. *Id.* App. Ex. 4.

After receiving Johnston's report, Schmelling made changes to it, and submitted it to Driscoll for his review and determination. Def.'s Mot. for Summ. J., App. 16–17. Unlike Johnston, Schmelling recommended that Stoddard be terminated, and excised Johnston's positive comments and suggestion for monitoring Stoddard's conduct. *Id.* App. 16–17.

### B. Procedural Background

On June 28, 2006, Stoddard filed a lawsuit against West in the 168th Judicial

District Court of El Paso County, Texas, alleging slander and employment discrimination. West timely removed the case to federal court. On February 5, 2007, Stoddard amended his complaint, alleging slander, libel, and employment discrimination on the basis of his race. West filed a Motion for Summary Judgment on all of Stoddard's claims on April 13, 2007. On July 31, 2007, the Court entered an order denying West's Motion for Summary Judgment as to both libel and employment discrimination, and granted summary judgment for West on the slander claim. *Stoddard v. West Telemarketing, L.P.*, 501 F.Supp.2d 862 (W.D.Tex.2007). The case proceeded to trial by jury.

At the close of evidence, West moved the Court to enter Judgment as a Matter of Law ("JMOL"), which motion was denied. On August 2, 2007, the jury returned a verdict finding that West libeled Stoddard, and finding no liability on the race discrimination charges. The jury awarded Stoddard $160,000 for mental anguish, $250,000 for injury to his reputation, and $820,000 in punitive damages.

In West's renewed Motion, it argues there was legally insufficient evidence to show West libeled Stoddard, and urges the Court render a take-nothing judgment. Def.'s Renewed Mot. JMOL 1. West argues that even if the Court finds the libel award is proper, the awards of compensatory damages for mental anguish and injury to reputation are not supported by the evidence, and that punitive damages are unwarranted. *Id.* at 9–12. Finally, it argues that even if the compensatory damages are proper and punitive damages are also warranted, any award of punitive damages is statutorily capped at $410,000.00. *Id.* at 12. Stoddard does not dispute that his recovery of punitive damages is limited to $410,000.00, but argues that he presented sufficient evidence to

support the jury's verdict, and that the damages awarded by the jury are warranted, together with interest and the costs of court, less the amount of punitive damages capped by statute. Pl.'s Resp. to Def.'s Renewed Mot. JMOL 15–16.

## II. LEGAL STANDARD FOR JMOL

 Federal Rule of Civil Procedure 50 governs motions for JMOL, which is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for that party on that issue." FED.R.CIV.P. 50(a). In reviewing a motion for JMOL, a court should review all of the evidence presented. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). It "must draw all reasonable inferences in favor of the non-moving party, and it may not make credibility determinations or weigh the evidence." *Id.* A court "should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses.'" *Id.* at 151, 120 S.Ct. 2097 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

## III. LIBEL

### A. Legal Standard

 Under Texas law, "[d]efamation is a false statement about a plaintiff published to a third person without legal excuse which damages the plaintiff's reputation." *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex.App.-Waco [10th Dist.] 2005, no pet.). Libel is "a defamation expressed in written ... form that ... tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or

ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation...." TEX. CIV. PRAC. & REM.CODE ANN. § 73.001 (Vernon 2007).

■ Generally, in order for a jury's verdict on a libel claim to be upheld, the plaintiff must show that, on the basis of the evidence, a reasonable jury could have concluded: (1) the defendant published a statement; (2) the statement referred to the plaintiff; (3) the statement was defamatory; and (4) the defendant acted with negligence regarding the truth of the published statement. *WFAA–TV, Inc. v. McLemore,* 978 S.W.2d 568, 571 (Tex. 1998).

■ However, where the statement was made in connection with an investigation following a report of employee wrongdoing, the statement is protected by a qualified privilege, and the plaintiff must meet a higher burden to defeat that privilege. *Randall's Food Mkts. v. Johnson,* 891 S.W.2d 640, 646 (Tex.1995) ("[A]n employer has a conditional or qualified privilege that attaches to communications made in the course of an investigation following a report of employee wrongdoing."); *see also Henriquez v. Cemex Mgmt., Inc.,* 177 S.W.3d 241, 253 (Tex.App.-Houston [1st Dist.] 2005, pet. denied) ("[C]ommunications between company principals and employees, including communications concerning the termination of an employee," are protected by a qualified privilege.).

■ To defeat the privilege, the plaintiff must prove "that a statement was motivated by actual malice, existing at the time of publication." *Henriquez,* 177 S.W.3d at 253. A statement is made with actual malice if it is made "with knowledge of its falsity or with reckless disregard as to its truth." *Id.* A statement is made with reckless disregard as to its truth if the speaker had "a high degree of awareness that the statement was probably false." *Id.*

■ In order for the defendant to retain the privilege, it must set forth evidence that conclusively establishes the statement was made absent malice. *Id.* "[I]f the defendant ... offers evidence that is 'clear, positive and direct,' even if such evidence is from an interested witness, establishing the lack of actual malice, the plaintiff must offer controverting proof to establish a fact issue as to malice." *Id.* at 254.

### B. Arguments of the Parties

Stoddard alleged "the report, as altered by Schmelling, constituted libel in the section entitled, [sic] 'Disciplinary Action for Kendrick Stoddard, DSO.'" Pl.'s Resp. to Def.'s Mot. for Summ. J. 16. The section, hereinafter "the challenged section," states,

This investigation has revealed a number of serious issues that pose potential liability for West [sic] particularly in the plaintiff friendly, litigious happy venue of El Paso, Texas.

Through his actions, Kendrick has failed to follow and enforce West policy. He has also failed to hold his managers accountable for same. He has undermined his authority and shown extremely poor judgment by not only fraternizing with employees after hours but allowing sexually explicit action (lap dancing by employees) to occur. The latter creates liability for the company as it could be perceived as contributing to a hostile work environment.

Kendrick cannot plead ignorance on these counts since he attended "Legal Issues for Managers" Training presented by Norma Schmelling, V.P. Corporate Employee Relations. He also attended a training session on the McClure lawsuit which West lost for a

considerable amount of money in November of 2004. In both of these training classes, Norma emphasized the importance of consistently enforcing policies, why managers should not socialize with subordinates and, most importantly, the vicarious liability that managers create for the company through their actions. Kendrick has also been deposed in several lawsuits brought against West in El Paso so he is aware of how plaintiffs' attorneys will attempt to twist facts and show the Company and its managers in the worse [sic] light. These depositions alone should have made him cognizant of the importance of his actions and how easily events and actions can be explained in the worse [sic] light by a skilled plaintiff's attorney.

The El Paso Site has had more lawsuits than any other site. The majority of these have been sexual harassment or some form of discrimination. The majority have also had retaliation as a cause of action. This investigation revealed several areas where, were a lawsuit to be filed, West would have no recourse but to settle based on the vicarious liability created by the actions of Kendrick. It is the recommendation of Employee Relations that Kendrick be given a Step IV PIN, termination, for his lack of professionalism and failure to follow company policy.

Pl.'s Trial Exhibit 4.

West asserts the libel claim is "legally and factually untenable," because there is no evidence of actual malice. Def.'s Renewed Mot. JMOL 1–2. West does not dispute that Schmelling made alterations in the report and composed the challenged section, but asserts she made the changes on the basis of her belief that each statement was true. *Id.* at 3. She believed her alterations and the additional section reflected the truth as she understood it, based on her review of Johnston's report, her knowledge of West's policy and procedures, her experience in the human relations field, and information she obtained from other ER personnel. *Id.* at 3. West submits Stoddard did not present any evidence with respect to Schmelling's state of mind such that a reasonable jury could have found she acted with actual malice. Def.'s Rep. in Supp. of JMOL 3–5.

Stoddard asserts statements in the challenged section are false and made with "actual malice ... [because they were] made with knowledge of [their] falsity or with reckless disregard for the truth." Pl.'s Resp. to Def.'s Renewed Mot. JMOL 8 (citing *Hagler v. Proctor & Gamble Mfg. Co.,* 884 S.W.2d 771, 772 (Tex.1994)). Stoddard asserts Schmelling knew or should have known that the statements in that section were false because they were based on Johnston's report after Schmelling had removed the positive notations about Stoddard's performance and conduct. *Id.* at 4–5. He contends that her conclusions were knowingly false because she purposely based them on incomplete information. *Id.* Stoddard also asserts Schmelling, having knowledge of West policy, should have known that the conduct described in Johnston's report did not violate any company policy, and so her opinion that Stoddard had violated West policy was knowingly false. *Id.* He specifically disputes that any of the actions described in Johnston's report violated West policy or created liability for West. *Id.*

Additionally, Stoddard disputes Schmelling's conclusions that he failed to require subordinates to follow policy, and that his credibility and ability to manage employees were undermined because Johnston's report did not reach similar conclusions. *Id.* at 5. Further he disputes that his fraternizing with subordinates, receiving a

"lap dance" from a subordinate, and not reporting a subordinate's arrest violated West policy. *Id.* at 6, 8. He insists West "has no anti-fraternization policy," "[t]he lap dances did not violate the company's sexual harassment policies," and "West's policy manual, [sic] does not require a supervisor to report an arrest." *Id.*

### C. Analysis

Taking the evidence in the light most favorable to Stoddard, the Court finds a reasonable jury could find that: (1) West published the challenged section when the report was sent to Driscoll; (2) the section referred to Stoddard; (3) statements within that section were false; and (4) West acted with negligence regarding the truth of the statements. *McLemore,* 978 S.W.2d at 571. Therefore, the Court will assume the statements are defamatory. Significantly, Stoddard does not dispute that the communications were made in connection with an "investigation following a report of employee wrongdoing," Pl.'s Resp. to Def.'s Mot. JMOL 3, so the statements are protected by a qualified privilege, *Henriquez,* 177 S.W.3d at 252–53. Accordingly, the Court will focus its analysis on whether Stoddard defeated the qualified privilege by presenting evidence that the statements were made with actual malice. *See id.* at 253.

■■■ In order to defeat a claim of qualified privilege, the plaintiff must show by clear and convincing evidence that the statements were made with actual malice. *Duffy v. Leading Edge Prods.,* 44 F.3d 308, 313 (5th Cir.1995). In reviewing a jury's verdict, "[j]udges, as expositors of the Constitution, must independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars the entry of any judgment that is not supported by clear and convincing proof of 'actual malice.'" *Bose Corp. v. Consumers Union,* 466 U.S. 485, 511, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984).

■■■ Question Ten of the verdict form in the instant case asked the jury whether, "the plaintiff prove[d] by clear and convincing evidence that the defendant acted with malice in committing the conduct you have found in Question Seven," [1] to which the jury responded, "Yes." Docket 107, 5. The jury charge defined "clear and convincing evidence" as "evidence that produces in your mind a firm belief or conviction as to the matter at issue. This involves a greater degree of persuasion than is necessary to meet the preponderance of the evidence standard." Docket 106, 15. As the jury found Stoddard presented clear and convincing evidence that Schmelling made the statements with actual malice, the Court will review the evidence to determine whether it is sufficient to support such a finding.

■■■ In determining whether the statements were made with actual malice, the focus must be on Schmelling's state of mind at the time she amended the report and had it sent to Driscoll. *See Danawala v. Houston Lighting & Power Co.,* 14 F.3d 251, 255 (5th Cir.1993) ("The focus is on [the person making the statement's] state of mind at the time of publication."). Proof that the statements were actually false is insufficient to show actual malice.[2]

---

1. Question Seven asked the jury, "[h]as the plaintiff proven by a preponderance of the evidence that defendant libeled him," to which the jury responded, "Yes." Docket 107, 4.

2. *Danawala* discusses the applicability of a qualified privilege to an allegation of slander, but is authoritative because the privilege is applied the same way for claims of slander and libel. *See e.g., Wheeler v. Miller,* 168 F.3d 241, 252–53 (5th Cir.1999) (applying the same

*Id.* In *Danawala,* there was evidence that a supervisor, who "harbored some ill feelings" toward a subordinate employee, published statements that the employee had "falsified" documents after the employee made an incorrect notation in a report. *Id.* at 255–56. At trial, the supervisor testified that the employee had merely "made a mistake," in not verifying the information contained in the report. *Id.* at 255. He admitted that "the term 'falsification' implies an intent to deceive, something more than a mere mistake," but testified that he believed the employee acted deceptively by implying that he had verified the information. *Id.* The Fifth Circuit found this evidence was insufficient, as a matter of law, to show actual malice, because there was no evidence the supervisor actually believed the statement was false or recklessly disregarded proof that it was. *Id.* at 256. In order for a reasonable juror to infer actual malice, there must be evidence that the speaker actually "knew the statement was false or had a high degree of awareness of its probable falsity." *Id.* Although evidence of animosity alone is insufficient, "evidence of ulterior motive can often bolster an inference of actual malice." *Duffy,* 44 F.3d at 315 n. 10.

 In this case, West submits that Schmelling believed the statements she wrote were true, summarizing her trial testimony as follows: "Schmelling wrote the statements after she reviewed Kimberly Johnston's initial summary of findings and against a backdrop of her knowledge of West's policies and her experience in the employee relations field." Def.'s Renewed Mot. JMOL 3. At trial, Stoddard presented no evidence with respect to Schmelling's state of mind, other than her testimony. Stoddard does not dispute West's characterization of Schmelling's testimony, but argues that she should have

known, based on her knowledge of West's policies, that none of Stoddard's actions constituted a violation. Although the jury was not required to believe Schmelling's testimony, even discredited testimony is not a sufficient basis for drawing a conclusion contrary to the stated testimony, and so even if the jury did not believe Schmelling, Stoddard was still required to produce evidence tending to show actual malice. *Seidenstein v. National Medical Enters., Inc.,* 769 F.2d 1100, 1105 (5th Cir.1985). Furthermore, although the Court will assume Schmelling is an interested witness, this evidence is sufficiently clear, positive and direct, in the absence of any controverting evidence, to show that Schmelling neither knew the statements to be false nor recklessly disregarded proof that they were false.

Stoddard argues Schmelling had knowledge of West policy, and therefore she must have known that his actions, as described in Johnston's report, were not violations of West policy. Pl.'s Resp. to Def.'s Mot. JMOL 6. He argues that the statement "Kendrick has failed to follow and enforce West policy," was therefore made with knowledge of its falsity. *Id.* Stoddard insists the two actions characterized as policy violations (not reporting a subordinate's arrest to ER and allowing a subordinate to perform a sexually suggestive dance for him) are not, in fact, violations. Stoddard submits that West policy required the subordinate employee, and not him, to report the arrest. Additionally, he indicates that the subordinate employee consented to the sexually suggestive dance, and therefore, it was not a violation of West's policy against sexual harassment.

As support for his claim, Stoddard offers discrepancies between Johnston's report

standard to a defamation claim involving both

written and orally communicated statements).

and the report eventually submitted to Driscoll for review and determination. Pl's Resp. to Def.'s Renewed JMOL 4–6. Johnston's report contained recommendations with respect to Stoddard, like those in a section in Johnston's report entitled, "Investigator Notes/Summary," which states,

> [w]hat I was able to confirm is that there is or was a serious concern with Kendrick's ability to demonstrate the level of professional judgment appropriate to his position. Through my interviews with him, he was very cooperative and open to suggestions. He stated many times that he has learned his lesson and that he is a different person as a result of this situation. This is very positive, but I believe that it is still extremely important for West to formally address the concerns with his professionalism.

*Id.* at 5–6. Schmelling removed that section entirely, and inserted the challenged section, which she composed.[3] *See* Pl.'s Trial Exhibit 4.

 The Court finds that this evidence shows Schmelling altered Johnston's report insofar as she drew different conclusions based upon Johnston's factual investigation. However, these alterations did not change the factual findings and meaning of the report. Under Texas law, "an allegedly defamatory publication should be construed as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it." *Turner v. KTRK TV., Inc.,* 38 S.W.3d 103, 114 (Tex.2000). A person of ordinary intelligence, reading both reports, would notice that the excised portions of Johnston's report consist mainly of Johnston's conclusions and recommendations, and that the challenged section consists of Schmelling's own conclusions and recommendations. Schmelling testified that, after consulting with Johnston and others, she concluded Stoddard should be terminated, and that she edited Johnston's report to reflect that conclusion, testimony which Stoddard does not dispute. Although Stoddard disputes that he violated West policy, Schmelling testified as to her belief (1) that West policy requires a supervisor to report a subordinate's arrest or ensure that the subordinate reports the arrest, and (2) West's policy against sexual harassment prohibits employees from engaging in sexually suggestive dances, even at a private party. Stoddard has presented no evidence suggesting that Schmelling

3. Schmelling also took out the following recommendations: (1) "that Matt Driscoll continue to monitor Kendrick's management of Aida and question any actions or decisions that would suggest any type of favoritism exists," (2) "Matt Driscoll should continue to monitor Kendrick's performance for any actions or decisions that may indicate favoritism or inconsistency are present," (3) "ER recommends that Kendrick cease to allow the one-on-one relationship and communication privileges not offered to other Supervisors," (4) "ER also recommends that Kendrick is held responsible for repeatedly stressing the importance of consistency and that he brings instances of inconsistency forward to ER and ensures that such issues are swiftly addressed. Kendrick must also be tasked with holding both Ops Managers to the same standards and expectations," and (5) "Whether or not he actually is or was involved with Tonya Randolph is unknown." Pl.'s Resp. to Def.'s Mot. JMOL 4–6. West argues that these alterations cannot be the basis for any finding of libel because Stoddard has previously maintained that the libel occurred only in the section entitled, "Disciplinary Action for DSO," and is estopped from expanding the scope of his claim. Reply 1. West is correct that these alterations cannot be the basis for the finding of libel, but they do tend to support Stoddard's claim insofar as they show Schmelling deliberately excised certain portions of Johnston's report in order for the challenged section to be logically supported.

knew or should have known that any statements in the challenged section were false.

Therefore, the Court concludes that no reasonable jury could not find that Schmelling wrote the challenged section with an awareness of the section's falsity because no evidence was presented with respect to her state of mind that could lead to such a conclusion. Furthermore, evidence was presented at trial that Schmelling was upset as a result of successful lawsuits against West alleging employment discrimination, and believed that Stoddard's actions created a potential for more liability for West. This evidence supports a conclusion that her motive in making the alterations was not to defame Stoddard, but rather to protect West from continued liability from a potential suit alleging sexual harassment. The Court concludes that a reasonable jury could not have found, by clear and convincing evidence, that she altered the report with actual malice, and is therefore of the opinion that JMOL is appropriate for the libel claim.

## IV. CONCLUSION

Because the Court has found Stoddard failed to set forth a legally sufficient evidentiary basis upon which a reasonable jury could find in his favor on the basis of his libel claim, the Court is of the opinion that JMOL is appropriate on this issue. Furthermore, because the jury found in Stoddard's favor only on the basis of libel, the Court is of the opinion that judgment should be entered against Stoddard on all grounds. Any damages awarded to Stoddard are, therefore, inappropriate.

Accordingly, **IT IS ORDERED** that Defendant West Telemarketing, L.P.'s "Renewed Motion for Judgment as a Matter of Law" (Docket No. 110) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff Kendrick J. Stoddard's "Motion for Entry of Judgment" (Docket No. 94) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff Kendrick J. Stoddard have and recover nothing from Defendant West Telemarketing, L.P.

**IT IS FURTHER ORDERED** that the above-captioned cause be, and hereby is, **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED AS MOOT.**

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this matter.